MISSION HOSPITALS, INC., PETITIONER, AND NORTH CAROLINA RADIATION THERAPY MANAGEMENT SERVICES, INC. D/B/A 21ST CENTURY ONCOLOGY, PETITIONER-INTERVENOR v. N.C. DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF FACILITY SERVICES, CERTIFICATE OF NEED SECTION, RESPONDENT, AND ASHEVILLE HEMATOLOGY AND ONCOLOGY ASSOCIATES P.A., RESPONDENT-INTERVENOR

No. COA06-1642

(Filed 18 March 2008)

**1. Administrative Law— certificates of need—ex parte communications—new hearing**

The director of the Department of Health and Human Services, Division of Facility Services violated the provision of N.C.G.S. § 150B-35 prohibiting ex parte communications in contested cases between the agency decision maker and any party in connection with any issue of fact or question of law when, on two occasions prior to reversing the recommended decision of an ALJ that an oncology treatment center was not required to obtain certificates of need (CONs) in order to relocate its offices and acquire radiation therapy equipment, the director requested cost information from counsel of a hospital opposing the oncology treatment center without notice to other parties or affording an opportunity for the other parties to participate; the information provided by the hospital in response to those requests pertained to the pivitol issue as to whether the treatment center's costs were above or below the statutory threshold for CONSs; and the ex parte communications thus involved both issues of fact and questions of law. Therefore, the agency decision is reversed and remanded for a new hearing to be held by a person other than the director who engaged in the improper ex parte communications.

2. **Administrative Law— certificates of need—rejection of ALJ's recommended decision—reasons for not adopting ALJ's findings**

The Department of Health and Human Services, Division of Facility Services violated N.C.G.S. § 150B-34(c) and prejudiced an oncology treatment center's right to appellate review by failing to set forth specific reasons for not adopting certain findings of fact by an ALJ when it rejected the ALJ's recommended decision that the treatment center was not required to obtain certificates of need in order to relocate its offices and to acquire radiation therapy equipment. On remand, all findings in the ALJ's recommended decision should be addressed in any final agency decision that declines to adopt the ALJ's recommendation.

Appeal by respondent-intervenor Asheville Hematology and Oncology Associates, P.A., from a Final Agency Decision entered 7 August 2006 by the North Carolina Department of Health and Human Services. Heard in the Court of Appeals 20 September 2007.

*Smith Moore, LLP, by Maureen Demarest Murray, William W. Stewart, Jr., and Allyson Jones Labban, for petitioner-appellee, Mission Hospitals, Inc.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP, by Susan H. Hargrove, Sean A. Timmons, and Courtney H. Mischen, for petitioner-intervenor-appellee, North Carolina Radiation Therapy Management Services, Inc. d/b/a 21st Century Oncology.*

*Attorney General Roy Cooper, by Assistant Attorney General June S. Ferrell, for respondent-appellee N.C. Department of Health and Human Services, Division of Facility Services.*

*Bode, Call & Stroupe, LLP, by S. Todd Hemphill, Diana Evans Ricketts and Matthew A. Fisher, for respondent-intervenor-appellant Asheville Hematology and Oncology Associates, P.A.*

*Nelson, Mullins, Riley & Scarborough LLP, by Wallace C. Hollowell, III, on behalf of Alliance Imaging, Inc., amicus curiae.*

*Wyrick Robbins Yates & Ponton, LLP, by K. Edward Greene, Lee M. Whittman, and Sarah M. Johnson on behalf of Bio-Medical Applications of North Carolina, Inc., amicus curiae.*

**MISSION HOSPS., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.**

[189 N.C. App. 263 (2008)]

STEELMAN, Judge.

The North Carolina Department of Health and Human Services, Division of Facility Services erred by engaging in *ex parte* communications with one party without notice to the other parties or affording an opportunity to all parties to be heard. Because the *ex parte* communications were prejudicial to appellant's substantial right to a fair and impartial process, the Final Agency Decision is vacated. Upon remand, the Agency shall address all unadopted findings of the Administrative Law Judge ("ALJ") in its Final Agency Decision as required by N.C. Gen. Stat. § 150B-34(c).

## I. Factual and Procedural History

On 1 February 2005, Asheville Hematology ("AHO" or appellant), an oncology treatment center, sought a "no-review" determination from the Certificate of Need ("CON") Section of the North Carolina Department of Health and Human Services, Division of Facility Services ("Agency"), for a proposed relocation of its offices and acquisition of medical equipment that would allow AHO to provide radiation therapy. AHO presented four proposals: acquisition of a linear accelerator ("LINAC"), acquisition of a CT scanner, acquisition of treatment planning equipment, and relocation of their oncology treatment center. AHO sought a ruling that its proposals "do not require certificate of need review and are not new institutional health services, within the meaning of the CON law."

In determining the allocable costs for the CT scanner and LINAC projects, AHO applied upfitting costs to accommodate the CT scanner and LINAC and did not allocate general office construction costs, which were instead attributed to the base costs of the developer. AHO clearly specified in its letter which costs were attributed to each project and which costs were attributed to the developer's base costs. The submitted costs for the four projects, and associated thresholds against which AHO analyzed each of the proposals as a new institutional health service under the statute, were as follows:

MISSION HOSPS., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 263 (2008)]

| Project | AHO's Cost Projection | Statutory Threshold for "No Review" |
|---|---|---|
| CT Scanner | $ 488,547 | $ 500,000[1] |
| LINAC | $ 746,416 | $ 750,000[2] |
| Treatment Planning | $ 381,135 | $ 750,000[3] |
| Relocation | $ 1,985,278 | $ 2,000,000[4] |

On 2 August 2005, the CON Section issued four "no-review" letters, reviewing each proposal separately and confirming that none required a Certificate of Need. Each letter stated that "this determination is binding only for the facts represented by you." Shortly thereafter, the General Assembly amended N.C. Gen. Stat. § 131E-176(16) to require a CON for the acquisition of linear accelerators, regardless of cost, as a new institutional health service. (2005 Sess. Laws ch. 325, § 1). The relevant portion of the amendment became effective on 26 August 2005.

On 1 September 2005, Mission Hospitals, Inc. ("Mission" or "petitioner"), a nonprofit hospital in Asheville, North Carolina, filed a petition for a contested case hearing in the Office of Administrative Hearings ("OAH"), challenging each of the No-Review Determinations. North Carolina Radiation Therapy Management Services, Inc. d/b/a 21st Century Oncology ("21st Century" and, with Mission, "petitioners"), an oncology treatment center in Asheville, North Carolina, intervened in the proceeding, also contesting the No-Review Determinations. AHO intervened in support of the CON Section's No-Review Determinations.

On 26 May 2006, the ALJ entered a 65-page Recommended Decision affirming the No-Review Determinations. The ALJ agreed with the CON Section that the relocation of the existing oncology treatment center and the acquisition of equipment as proposed by AHO and addressed in the August 2005 No-Review determinations did not require Certificates of Need. The ALJ recommended that no CON was necessary because neither the relocation nor the acquisition projects "constitute[d] a 'new institutional health service' as defined by N.C.

---

1. *See* N.C. Gen. Stat. § 131E-176(7a) (2003) (governing diagnostic centers).

2. *See* N.C. Gen. Stat. § 131E-176(14f) (2003) (governing acquisition of major medical equipment).

3. *Id.*

4. *See* N.C. Gen. Stat. § 131E-176(16) (2003) (governing capital expenditures).

Gen. Stat. § 131E-176 at the time that [AHO] acquired vested rights to develop these services."

OAH filed the official record with the Agency on 8 June 2006, requiring the Agency to make its final decision by 7 July 2006. *See* N.C. Gen. Stat. § 131E-188(a)(5) (2005). On 27 June 2006, the Director of the Agency's Division of Facility Services ("Director") granted the Attorney General's request that the Agency extend the filing deadline for exceptions and written arguments, to 17 July 2006, and the decision deadline, to 7 August 2006.

Petitioners filed joint exceptions to the ALJ's Recommended Decision. Petitioners also filed written argument and a 64-page proposed Final Agency Decision on 17 July 2006 ("original proposed FAD"). The Director heard argument from all parties on 24 July 2006. The key issue was AHO's allocation methodology for construction costs under a proposed lease arrangement.

Near the conclusion of the 24 July 2006 hearing, the Director stated:

> MR. FITZGERALD: Okay. (INCOMPREHENSIBLE FOR 1 SEC-OND). Let's see, I don't, it is possible that after I review some of this material, I might schedule another conference call (INCOM-PREHENSIBLE FOR 2 SECONDS) a lot of time before the decision (INCOMPREHEN-SIBLE FOR 1 SECOND) sooner rather than later.

There was no statement by the Director to indicate that he had reached any decision at the conclusion of the 24 July 2006 hearing.

There is nothing in the 3,088-page record in this matter as to what may have transpired between Monday, 24 July 2006, and Friday, 4 August 2006, three days prior to the Agency's deadline for issuance of the Final Agency Decision.

On Friday morning, 4 August 2006, counsel for petitioner e-mailed a 73-page proposed Final Agency Decision to the Director, with a copy to all parties. The e-mail stated "Pursuant to your instructions, attached please find a revised decision." The record, however, is devoid of any communication from the Director which may have triggered this submission. The record falls silent, until Sunday afternoon, 6 August 2006.

MISSION HOSPS., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 263 (2008)]

On Sunday, the Director e-mailed petitioner's counsel, asking whether counsel had a "table" of actual costs. Petitioner's counsel was the sole recipient of this e-mail.

On Monday morning, 7 August 2006, petitioner's counsel responded with two electronic documents, stating in a cover e-mail: "[Attached] is the material that we understand you have requested." One attachment, AHO's exhibit from the contested case hearing, showed totals for each project *under* the statutory thresholds. The other attachment contained a modified page from the AHO exhibit which showed totals that *exceeded* the statutory thresholds for the LINAC, the CT scanner, and the oncology treatment center. The e-mail and the two attached documents were copied to all parties. Within ten minutes, the Director again e-mailed petitioner's counsel, again without copying any other party. An hour later, petitioner's counsel sent a modified version of AHO's exhibit with footnotes and calculations, accompanied by a further explanation.

On Monday, 7 August 2006, the Agency entered a Final Agency Decision reversing the Recommended Decision of the ALJ, rejecting the ALJ's conclusion that AHO had vested rights, classifying the previously-described relocation as a "proposed expansion," and ruling that AHO's proposed expansion, acquisition of a LINAC, and acquisition of the CT scanner each required a CON because the costs as computed in the Final Agency Decision exceeded the statutory thresholds.

The Final Agency Decision vacated and stayed all four No-Review Determinations and included a cease and desist order that stated, in relevant part:

> . . . Ashville [sic] Hematology and U.S. Oncology must immediately cease and desist the installation, use of, operation of the linear accelerator, and/or billing for services provided on the linear accelerator;

> . . . Ashville [sic] Hematology and U.S. Oncology must immediately cease and desist the installation, use of, operation of the CT scanner/simulator, and/or billing for services provided on the CT scanner/simulator;

> . . . Asheville Hematology and U.S. Oncology must immediately cease and desist the use of, operation of, or billing for any facility services related to radiation therapy, including but not limited

to linear accelerator services, CT simulator services and treatment planning services[.]

AHO appeals.

## II. Standard of Review

This matter is before us pursuant to N.C. Gen. Stat. § 131E-188 (2005), which affords appellant an appeal to this Court for review of the Final Agency Decision entered 7 August 2006. Since the 2001 amendments to N.C.G.S. § 150B-34(c) of the North Carolina Administrative Procedure Act, the scope of review of a final agency decision arising under the CON statute continues to be governed by the 1999 Administrative Procedure Act rather than the amended provisions of N.C. Gen. Stat. § 150B-51. *See Total Renal Care of N.C., LLC v. N.C. Dep't of Health & Human Servs.*, 171 N.C. App. 734, 737-39, 615 S.E.2d 81, 83-84 (2005) (detailing the interplay of the CON statutes with the 1999 Administrative Procedure Act).

While the scope of review of an Agency decision involving a "no review" determination for a certificate of need is governed by statute, the substantive nature of each assignment of error dictates the appropriate standard of review. *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 658-59, 599 S.E.2d 888, 894 (2004). Errors of law are reviewed *de novo*. *Id.*

## III. Analysis

### A. Ex parte Communications

[1] In its first argument, appellant contends that the Agency erred in engaging in *ex parte* communications with petitioner's counsel prior to issuing the Final Agency Decision, and, because the violation compromised its due process rights to a fair and impartial hearing, the Final Agency Decision must be reversed. We agree.

The Final Agency Decision was entered on 7 August 2006, the statutory deadline. *See* N.C. Gen. Stat. § 131E-188(a)(5). Absent a decision that did not adopt the ALJ's recommended decision, the ALJ's recommendation could become *de facto* effective thereafter. *See HCA Crossroads Residential Ctrs. v. N.C. Dep't of Human Res.*, 327 N.C. 573, 579, 398 S.E.2d 466, 470 (1990) (concluding that applicable time limits established in the CON law are jurisdictional in nature).

### (1)  Statutory Prohibition on Ex Parte Communications

N.C. Gen. Stat. § 150B-35 states:

Unless required for disposition of an ex parte matter authorized by law, neither the administrative law judge assigned to a contested case nor a member or employee of the agency making a final decision in the case may communicate, directly or indirectly, in connection with any issue of fact, or question of law, with any person or party or his representative, except on notice and opportunity for all parties to participate.

N.C. Gen. Stat. § 150B-135 (2005).

### (2)  The Director's E-mails

On Sunday, 6 August 2006, before the Director had announced his decision, the Director e-mailed petitioner's counsel:

Do you have a table of what the actual costs of the development of this project was [sic] using the cost of the equipment, the cost of the construction associated with the space occupied by the oncology treatment center, and the upfit required to accomodate [sic] the equipment compared to the threshold amounts for the various components? Incidently [sic], if the cost of the space is included in the total there is no reason to include the HVAC cost as it would already be part of the total. Bob

No other party was copied on this e-mail.

On Monday morning, 7 August 2006, the Director again e-mailed petitioner's counsel:

It appears there must be at least two pages to the Word Document labeled Mission-Chart. I only received the last page with your e-mail.

Again, no other party was copied on the e-mail.

### (3)  § 150B-35 and the Director's Conduct

Under the broad language of N.C. Gen. Stat. § 150B-35, no "member or employee of the agency making a final decision in the case may communicate, directly or indirectly, in connection with any issue of fact, or question of law, with any person or party or his representative, except on notice and opportunity for all parties to participate." *Id.* (2005).

MISSION HOSPS., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 263 (2008)]

At a time when no decision had been made on the record, the Director corresponded on at least two occasions with one party's counsel without notice to the other parties or affording an opportunity for other parties to participate. In response, petitioner's counsel e-mailed documents that were not before the Agency at the 24 July 2006 hearing. Petitioner's counsel, unlike the Director, copied all parties on the e-mail communications. Nonetheless, these actions afforded appellant no opportunity to participate.

Neither petitioners nor the Agency suggest that the *ex parte* communications were "required for disposition of an ex parte matter authorized by law," which is the sole exception to the prohibition against *ex parte* communications under the statute. N.C. Gen. Stat. § 150B-35. Consequently, the communications are subject to the statute if they were made "in connection with any issue of fact or question of law." *Id.*

### (a) Content of the Communications

On 17 July 2006, petitioner filed a 64-page proposed Final Agency Decision, containing 107 findings of fact and 47 conclusions of law. On Friday, 4 August 2006, with a cover stating "Pursuant to your instructions, attached please find a revised decision[,]" petitioner e-mailed a 73-page document containing 145 findings of fact and 53 conclusions of law. Two days later, following the Director's *ex parte* inquiry regarding a table of "actual costs" and a second *ex parte* e-mail, petitioner made modifications to one of AHO's exhibits and submitted the revised exhibit to the Director.

The pivotal issue before the Agency was whether appellant's costs for each of four projects was below or above the applicable statutory thresholds. If the costs of any particular project were above the statutory threshold, a CON would be required; if below, the project would remain exempt from CON requirements. When *ex parte* communications involve an exhibit demonstrating totals for each project based upon costs *below* the statutory thresholds that is modified to reflect costs *above* the statutory thresholds, on the basis of statutorily-governed cost allocation methodologies, we hold that those communications involve both "an issue of fact" and a "question of law" before the Agency. N.C. Gen. Stat. § 150B-35.

### (b) Conduct of Agency Controlled by APA

Appellees argue that it was appropriate for the Director to solicit assistance from petitioner's counsel in the preparation of the order

since trial judges in North Carolina routinely direct counsel to prepare orders for them.

Proceedings pursuant to the Administrative Procedure Act (Chapter 150B of the General Statute) are not proceedings in the General Court of Justice of North Carolina. Nor are Administrative Law Judges and Agency decision-makers judges under Article IV of the Constitution of North Carolina. Administrative agencies and departments exist pursuant to Section 11 of Article III of the Constitution of North Carolina, and as such are part of the Executive Branch of our State's government. While the Administrative Procedure Act adopts many concepts from the North Carolina Rules of Civil Procedure (N.C. Gen. Stat. § 150B-33) and the North Carolina Rules of Evidence (N.C. Gen. Stat. § 150B-29), the Act does not adopt the Code of Judicial Conduct, which governs General Court proceedings and communications among the parties.

The Director's conduct is thus governed exclusively by N.C. Gen. Stat. § 150B-35 and its plain meaning, and not by analogy to what is appropriate conduct for Article IV trial judges.

### (c) Result is an Error of Law

We acknowledge that cases involving Certificates of Need are highly complex, and that the Agency was placed in a very tight statutory time frame within which to render a decision. However, this cannot excuse the Director's clear violation of the provisions of N.C. Gen. Stat. § 150B-35, which prohibits such *ex parte* communications. We hold that the Director's *ex parte* communication with petitioner's counsel in the preparation of the Final Agency Decision violated the plain language of N.C. Gen. Stat. § 150B-135 and that this violation constitutes an error of law under N.C. Gen. Stat. § 150B-51(b) (1999), as discussed in (4) below.

### (4) Ramifications of Violation

Under the provisions of N.C. Gen. Stat. § 150B-34(c) and *Total Renal Care*, 171 N.C. App. 734, 737-39, 615 S.E.2d 81, 83-84, this Court may reverse or modify an agency decision if:

[T]he substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary or capricious.

N.C. Gen. Stat. § 150B-51(b) (1999). Thus, we must determine whether appellant may have been prejudiced by the error of law.

### (a) Parties' Rights under N.C. Gen. Stat. § 150B-25 *et seq.*

N.C. Gen. Stat. § 150B-25 governs the conduct of contested case hearings. In relevant part, this statute affords parties the opportunity to "cross-examine any witness, including the author of a document prepared by, on behalf of, or for use of the agency and offered in evidence." *Id.* (2005).

N.C. Gen. Stat. § 150B-29 provides rules of evidence for agency proceedings. In relevant part, it states:

> Evidence in a contested case, including records and documents, shall be offered and made a part of the record. Factual information or evidence not made a part of the record shall not be considered in the determination of the case, except as permitted under G.S. 150B-30.

N.C. Gen. Stat. § 150B-29(b) (2005). The referenced exception in N.C. Gen. Stat. § 150B-30 allows for official notice of certain facts provided that:

> The noticed fact and its source shall be stated and made known to affected parties at the earliest practicable time, and any party shall on timely request be afforded an opportunity to dispute the noticed fact through submission of evidence and argument.

N.C. Gen. Stat. § 150B-30 (2005).

### (b) Prejudice Analysis

In determining whether AHO's rights were prejudiced, we consider the content of the proscribed communications, the extent of the

revisions to petitioner's original proposed FAD, and AHO's opportunity to respond.

The documents submitted by petitioner's counsel *ex parte* incorporated cost allocations that were not part of the ALJ's recommended decision. Moreover, the Final Agency Decision contains numerous findings of fact and conclusions of law from the proposed FAD submitted on 4 August 2006 that not only were not in the proposed FAD submitted on 17 July 2006, but also applied the cost allocation method referenced in the *ex parte* communications. At least 43 new findings of fact were not before the Agency at the 24 July 2006 hearing but were incorporated at petitioner's suggestion three days before the Final Agency Decision was due. A careful review of the two proposed FADs reveal that many of the revisions incorporate cost allocation concepts that were the subject of the proscribed communications.

The timing of the proscribed communications, the Director's failure to include all parties, and the statutory timeframe for issuing a Final Decision not only violated AHO's right to notice under the APA but also effectively precluded any opportunity to respond.

We hold that the Agency exceeded its statutory authority and that AHO's substantial right to notice and a genuine opportunity to be heard was prejudiced by the process through which the Agency issued its final decision.

### (5)  Remedy for Violation

Appellant argues that the appropriate remedy is to adopt the decision of the ALJ. We decline to impose such a drastic remedy. Rather we hold that the decision of the Agency is reversed and vacated, and we remand the matter to the Agency for a new hearing upon a Final Agency Decision. Since Director Robert Fitzgerald engaged in the improper *ex parte* communications, he is prohibited from conducting the new hearing. The Agency shall designate another person to conduct the hearing. All parties shall have a full and equal opportunity to be heard, and there shall be no *ex parte* communications.

### (B)  Compliance with N.C. Gen. Stat. § 150B-34(c)

[2] In its second argument, appellant contends that the Agency's failure to recite and address all of the facts set forth in the recommended decision, as required by N.C. Gen. Stat. § 150B-34(c), violated its right to meaningful appellate review. We agree in part and disagree in part.

Appellant contends that the Agency's failure to reference over sixty numbered findings of fact from the recommended decision implicitly rejects those findings "without stating the specific reason based on substantial, admissible evidence as required by the APA." Appellant asserts that the omitted findings eliminated evidence in conflict with the Agency's "desired outcome" and enabled the Agency to write a decision that "may appear facially plausible but in fact is insupportable on the record."

We address this issue because it is otherwise likely to recur upon remand. The relevant provision of N.C. Gen. Stat. § 150B-34(c) states:

> A final decision shall be made by the agency in writing after review of the official record as defined in G.S. 150B-37(a) and shall include findings of fact and conclusions of law. The final agency decision shall recite and address *all* of the facts set forth in the recommended decision. For *each* finding of fact in the recommended decision not adopted by the agency, the agency shall state the specific reason, based on the evidence, for not adopting the findings of fact and the agency's findings shall be supported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31.

N.C. Gen. Stat. § 150B-34(c) (2005) (emphasis added). First, we note that appellant mistakenly conjoins the principles of the last sentence. The statute does not require that specific reasons be supported by substantial, admissible evidence. Instead, it requires that: (1) for *each* finding of fact not adopted by the Agency, the Agency state the specific reason, based upon the evidence, for not adopting the findings, and (2) the Agency's findings (not its reasons) be supported by substantial evidence admissible under N.C. Gen. Stat. §§ 150B-29(a), 150B-30, or 150B-31.

Nonetheless, the Agency did not comply with the statute insofar as it failed to state "the specific reason" for not adopting certain findings of facts, or omitting certain findings from itemized lists of related findings. The decision gives no reason why certain findings are itemized and others are omitted. Moreover, the Agency declined to adopt a large number of findings and conclusions of law simply as "immaterial" and "irrelevant" to substantive issues without reference to its findings, conclusions, or decision regarding those issues. We agree that this approach does not comport with the dual intent of the statute to safeguard against arbitrary decisions and facilitate meaningful appellate review.

We hold that the Agency's failure to comply with the statutory mandate of N.C. Gen. Stat. § 150B-34(c) prejudiced appellant's right to meaningful appellate review to the limited extent that appellant was not afforded the opportunity to address the Agency's reasoning for rejecting material and essential findings by the ALJ, including findings[5] related to the initial agency determination and its consistency with earlier no-review determinations. On remand, all findings in the ALJ's recommended decision should be addressed in any Final Agency Decision that declines to adopt the ALJ's recommendation.

## IV. Conclusion

We hold that the Agency violated the provisions of N.C. Gen. Stat. § 150B-35 by engaging in *ex parte* communications with counsel for the petitioner to the exclusion of other parties. We further hold that the substantial rights of appellant were prejudiced by this conduct. The Agency's decision is hereby vacated.

We remand this matter to the Agency for proceedings consistent with this opinion. The Agency may adopt the ALJ's recommended decision or it may conduct a new hearing in accordance with Article III of the Administrative Procedure Act. Any hearing shall be conducted by a person other than Director Fitzgerald.

A decision that fails to adopt the recommended decision must state its specific reason, based on the evidence, for not adopting each material or essential finding of fact that it declines to adopt, in accordance with N.C. Gen. Stat. § 150B-34(c), and its own findings shall be supported by substantial evidence admissible under N.C. Gen. Stat. §§ 150B-29(a), 150B-30, or 150B-31.

Because of these holdings, we need not address appellant's remaining arguments.

VACATED and REMANDED.

Judges BRYANT and GEER concur.

---

5. Specifically Findings of Fact 1-3, 31-33, 36, 38, and 60 in the Administrative Law Judge's Recommended Decision.