**HOPE-A WOMEN'S CANCER CTR., P.A. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.**

[203 N.C. App. 276 (2010)]

HOPE-A WOMEN'S CANCER CENTER, P.A., Plaintiff-Petitioner v. NORTH CAR-
OLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF
HEALTH SERVICE REGULATION, Defendant-Respondent, and ASHEVILLE
RADIOLOGY ASSOCIATES, P.A., THE CHARLOTTE-MECKLENBURG HOSPITAL
AUTHORITY D/B/A/ CAROLINAS HEALTHCARE SYSTEM, AMI SUB OF NORTH
CAROLINA, INC. D/B/A CENTRAL CAROLINA HOSPITAL, CUMBERLAND
COUNTY HOSPITAL SYSTEM, INC. D/B/A CAPE FEAR VALLEY HEALTH SYS-
TEM, DUKE UNIVERSITY HEALTH SYSTEM, INC., FRYE REGIONAL MEDICAL
CENTER, INC., HIGH POINT REGIONAL HEALTH SYSTEM, HUGH CHATHAM
MEMORIAL HOSPITAL, INC., NORTH CAROLINA HOSPITAL ASSOCIATION,
HENDERSON COUNTY HOSPITAL CORPORATION D/B/A MARGARET R.
PARDEE MEMORIAL HOSPITAL, MISSION HOSPITALS, INC., REX HOSPITAL,
INC., and WAKEMED, Respondent-Intervenors

No. COA08-1548

(Filed 6 April 2010)

**1. Declaratory Judgments— certificate of need—new institu-
tional health service**

The trial court did not err in affirming the Department of
Health and Human Service's (DHHS) declaratory ruling that
plaintiff Hope's project was a "new institutional health service"
requiring a certificate of need (CON). The trial court applied the
proper standard of review to DHHS's ruling and Hope's project fit
within the definition of a "new institutional service" under
N.C.G.S. § 131E-176(16)(f1). A Services Agreement pursuant to
which Hope would gain possession of equipment identified in (f1)
was a "comparable agreement" by which Hope would acquire the
equipment within the meaning of the CON law.

**2. Declaratory Judgment— certificate of need—bases of
DHHS ruling**

The trial court did not err in affirming the Department of
Health and Human Service's (DHHS) declaratory ruling that
plaintiff Hope's project required a certificate of need where the
ruling denied Hope's request "not only for the reasons stated in
the ruling, but also for 'additional bases' not discussed in the rul-
ing." Contrary to Hope's contention, this did not "incorporate 416
additional pages of argument against Hope" into the ruling but
simply stated that DHHS considered the comments of the
Intervenors and that the comments supported the ruling.

**3. Attorney Fees— declaratory judgment—certificate of need**

The trial court did not err in denying plaintiff Hope's request
for attorney fees in a certificate of need declaratory judgment
action because Hope was not the prevailing party.

HOPE-A WOMEN'S CANCER CTR., P.A. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[203 N.C. App. 276 (2010)]

Appeal by Petitioner from judgment entered 26 June 2008 by Judge Robert H. Hobgood in Wake County Superior Court. Heard in the Court of Appeals 18 August 2009.

*Nelson Mullins Riley & Scarborough LLP, by Noah H. Huffstetler, III, Denise M. Gunter, Wallace C. Hollowell, III, and Franklin Scott Templeton, for Petitioner-Appellant.*

*Attorney General Roy A. Cooper, by Assistant Attorney General June S. Ferrell, for Respondent-Appellee.*

*Bode, Call & Stroupe, LLP, by Robert V. Bode, Diana Evans Ricketts, and S. Todd Hemphill, for Respondent-Intervenor-Appellees AMI SUB of North Carolina Inc. d/b/a Central Carolina Hospital, Frye Regional Medical Center, Inc., Hugh Chatham Memorial Hospital, Inc., NCHA, Inc., d/b/a North Carolina Hospital Association.*

*K&L Gates LLP, by Gary S. Qualls, Colleen M. Crowley, and William W. Stewart, Jr., for Respondent-Intervenors-Appellees The Charlotte-Mecklenburg Hospital Authority d/b/a Carolinas HealthCare System, Cumberland County Hospital System, Inc. d/b/a Cape Fear Valley Health System, High Point Regional Health System, and Rex Hospital, Inc.*

*Smith Moore Leatherwood LLP, by Maureen Demarest Murray, Terrill Johnson Harris, and Allyson Jones Labban, for Respondent-Intervenor-Appellees WakeMed, Mission Hospitals, Inc., and Henderson County Hospital Corporation d/b/a Margaret R. Pardee Memorial Hospital.*

*Kirschbaum, Nanney, Keenan & Griffin, PA, by Frank S. Kirschbaum, for Respondent-Intervenor-Appellee Asheville Radiology Associates, P.A.*

*Catharine W. Cummer, for Respondent-Intervenor Appellee Duke University Health System, Inc.*

BEASLEY, Judge.

Hope-A Women's Cancer Center, P.A. (Hope) appeals from a judgment, affirming a declaratory ruling by the North Carolina Department of Health and Human Services, Division of Health Service Regulation (DHHS). DHHS denied Hope's request for a declaratory ruling that its "entry into the Services Agreement described in [its] request and its provision of diagnostic and radiation

HOPE-A WOMEN'S CANCER CTR., P.A. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[203 N.C. App. 276 (2010)]

oncology services to its patients by means of that Services Agreement (the 'project'[1])" would not constitute a "new institutional health service" as defined in N.C. Gen. Stat. § 131E-176(16)," but instead ruled that Hope would be required to obtain a certificate of need (CON) for the project. For the reasons stated below, we affirm.

Hope is a health service facility, located in Asheville, North Carolina, dedicated to the diagnosis and treatment of cancer and related diseases in women. In its request for declaratory ruling, Hope proposed to enter into a Services Agreement with an unidentified "out-of-state business corporation" (Provider). By the terms of the Services Agreement, the Provider would furnish Hope with diagnostic and radiation oncology services to provide for its patients. These services would be provided using the following equipment: a linear accelerator with a multi-leaf collimator, a dual use positron emission tomography (PET) scanner with computerized tomography (CT) capability (which would be used for both diagnostic and treatment simulation purposes), and a magnetic resonance imaging (MRI) scanner (collectively, Equipment). The Provider would also furnish personnel, ancillary equipment, disposable supplies, maintenance services, and technical support necessary to the functioning of the Equipment. The terms of the Services Agreement would also provide for the following, in pertinent part:

> [T]he Provider will retain the risk of any loss or damage to the Equipment, and will be responsible for its insurance. The Provider will be liable for any property or other taxes on the Equipment. No specifically identified unit of the Equipment will be required to be furnished under the Services Agreement. So long as the Equipment meets the specifications set forth in the Services Agreement, the Provider will have the option to select the particular units of the Equipment to be used, and substitute units of the Equipment as may become necessary. Hope will not purchase, lease or otherwise acquire any ownership or property interest in the Equipment.

---

1. By use of the term "project" to describe Hope's proposed undertaking, we are *not* using it as defined by N.C. Gen. Stat. § 131E-176(20), which defines "Project" to mean "a proposal to undertake a capital expenditure *that results in the offering of a new institutional health service* as defined by this Article." N.C. Gen. Stat. § 131E-176(20) (2009) (emphasis added). As the issue presented by Hope's request for declaratory ruling was whether Hope's proposed undertaking would constitute a "new institutional health service," to use the term in that manner would presume the answer to that issue. We use the term "project" only for convenience and because that is the term used in Hope's petition for judicial review.

HOPE-A WOMEN'S CANCER CTR., P.A. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[203 N.C. App. 276 (2010)]

In November 2007, Hope submitted a request for a declaratory ruling pursuant to N.C. Gen. Stat. § 150B-4 and N.C. Admin. Code tit. 10A, r. 14A-0103 (June 2008). Hope requested a determination that its proposed project, including entry into the Services Agreement, did not constitute a "new institutional health service" as defined in N.C. Gen. Stat. § 131E-176(16) and therefore, did not require it to obtain a CON. Hope's request for declaratory ruling was opposed by Asheville Radiology Associates, P.A., North Carolina Hospital Association, The Charlotte Mecklenburg Hospital Authority d/b/a Carolinas Health-Care System (CHS), Cumberland County Hospital System, Inc. d/b/a Cape Fear Valley Health System (Cape Fear), High Point Regional Health System (High Point), Rex Hospital, Inc. (Rex), Onslow Memorial Hospital, Inc., Southeast Radiation Oncology Group, P.A., Wake Med, Central Carolina Hospital, Hugh Chatham Memorial Hospital, Inc., Mission Hospitals, Inc., and Margaret R. Pardee Memorial Hospital (collectively, Commentators); all filed comments with DHHS opposing Hope's request for declaratory judgment. The North Carolina Medical Society submitted written comments in support of Hope's declaratory ruling request.

On 16 January 2008, DHHS filed a declaratory ruling denying Hope's request for a ruling that its proposed project would not require a CON. In February 2008, Hope petitioned for judicial review of DHHS's ruling in Wake County Superior Court, pursuant to N.C. Gen. Stat. §§ 150B-4, 150B-43, 150B-45, and 150B-46. Respondent-Intervenors-Appellees AMI SUB of North Carolina, Inc. d/b/a Central Carolina Hospital, Frye Regional Medical Center, Inc., Hugh Chatham Memorial Hospital, Inc., NCHA, Inc. d/b/a The North Carolina Hospital Association, Asheville Radiology Associates, P.A., Duke University Health System, Inc., Henderson County Hospital Corporation d/b/a Margaret R. Pardee Memorial Hospital, Mission Hospitals, Inc., Rex Hospital, Inc., Cumberland County Hospital System, Inc. d/b/a Cape Fear Valley Health System, High Point Regional Health System, The Charlotte-Mecklenburg Hospital Authority d/b/a Carolinas HealthCare System and WakeMed (collectively, Intervenors) filed motions to intervene on 4 April 2008, and these motions were granted by an order entered on 26 June 2008. The order allowing intervention permitted each Intervenor to have the same rights as a party and to participate fully in all aspects of the proceeding. In June 2008, the Wake County Superior Court affirmed DHHS's ruling. From this order, Hope appeals.

HOPE-A WOMEN'S CANCER CTR., P.A. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[203 N.C. App. 276 (2010)]

**[1]** Hope first argues that the trial court erred in affirming DHHS's declaratory ruling that Hope's project was a "new institutional health service" requiring a CON. Hope contends that its proposed project is not a "new institutional health service" under any subsection of N.C. Gen. Stat. § 131E-176(16). We disagree.

The standard of review

regarding an administrative decision consists of examining the superior court order for errors of law; i.e. determining first whether the superior court utilized the appropriate scope of review and, second, whether it did so correctly. The nature of the error asserted by the party seeking review of the agency decision dictates the proper scope of review.

*Christenbury Surgery Ctr. v. N.C. Dep't of Health & Human Servs.*, 138 N.C. App. 309, 311-12, 531 S.E.2d 219, 221 (2000) (citing *In re Declaratory Ruling by North Carolina Com'r of Ins.*, 134 N.C. App. 22, 517 S.E.2d 134 (1999)). If the appellant claims that the agency decision was based upon an error of law, review is *de novo*. *Christenbury*, 138 N.C. App. at 312, 531 S.E.2d at 221. If the alleged error is "one of statutory interpretation, the reviewing court is not bound by the agency's interpretation of the statute, although some deference is traditionally afforded the agency interpretation." *Id.* (citation omitted).

The trial court's order states that it reviewed DHHS's declaratory ruling *de novo*. Thus, the trial court applied the proper standard of review. We must now consider whether the trial court correctly applied *de novo* review to the legal issues raised by this appeal.

The General Assembly has set forth the activities requiring a CON in N.C. Gen. Stat. § 131E-178 as follows, in pertinent part:

(a) No person shall offer or develop a new institutional health service without first obtaining a certificate of need from the Department . . . .

. . . .

(b) No person shall make an *acquisition by donation, lease, transfer, or comparable arrangement* without first obtaining a certificate of need from the Department, *if the acquisition would have been a new institutional health service if it had been made by purchase.* In determining whether an acquisition would have been a new institutional health service, the capital expenditure

HOPE-A WOMEN'S CANCER CTR., P.A. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[203 N.C. App. 276 (2010)]

for the asset shall be deemed to be the fair market value of the asset or the cost of the asset, whichever is greater.

N.C. Gen. Stat. §§ 131E-178(a)-(b) (2009) (emphasis added). "The fundamental purpose of the certificate of need law is to limit the construction of health care facilities in this state to those that the public needs and that can be operated efficiently and economically for their benefit." *In Re Humana Hosp. Corp. v. N.C. Dept. of Human Resources*, 81 N.C. App. 628, 632, 345 S.E.2d 235, 237 (1986).

N.C. Gen. Stat. § 131E-176(16) defines the term "[n]ew institutional health services" as used in 131E-178(a). Hope contends that four subsections of N.C. Gen. Stat. § 131E-176(16) are potentially applicable to the project but argues that none of these subsections applies because of the features of the Services Agreement. The subsections which Hope argues are potentially applicable are:

b. Except as otherwise provided in G.S. 131E-184(e), the obligation by any person of a capital expenditure exceeding two million dollars ($2,000,000) to develop or expand a health service or a health service facility, or which relates to the provision of a health service. The cost of any studies, surveys, designs, plans, working drawings, specifications, and other activities, including staff effort and consulting and other services, essential to the acquisition, improvement, expansion, or replacement of any plant or equipment with respect to which an expenditure is made shall be included in determining if the expenditure exceeds two million dollars ($2,000,000).

. . . .

f1. The acquisition by purchase, donation, lease, transfer, or comparable arrangement of any of the following equipment by or on behalf of any person:

. . . .

5a. Linear accelerator.

. . . .

7. Magnetic resonance imaging scanner.

8. Positron emission tomography scanner.

9. Simulator.

. . . .

HOPE-A WOMEN'S CANCER CTR., P.A. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[203 N.C. App. 276 (2010)]

p. The acquisition by purchase, donation, lease, transfer, or comparable arrangement by any person of major medical equipment.

. . . .

s. The furnishing of mobile medical equipment to any person to provide health services in North Carolina, which was not in use in North Carolina prior to the adoption of this provision, if such equipment would otherwise be subject to review in accordance with G.S. 131E-176(16)(f1.) or G.S. 131E-176(16)(p) if it had been acquired in North Carolina.

N.C. Gen. Stat. § 131E-176(16) (2009).

We first note that if Hope's proposed project would fit within the definition of a "new institutional health service" under any subsection of N.C. Gen. Stat. § 131E-176(16), a CON would be required for the project. The fact that the project would not be covered under any of the approximately seventeen other potential definitions of "new institutional health service" is irrelevant. Therefore, if any one of the potential definitions as noted above were applicable to Hope's proposed project, it would constitute a "new institutional health service" and would thus require a CON under N.C. Gen. Stat. § 131E-178(a).

We also note that the proposed Services Agreement was not provided by Hope in its request for declaratory ruling; Hope gave only a general description of the major terms of the proposed agreement. In fact, the Respondent-Intervenors have argued that the request for declaratory ruling lacked sufficient information in several respects for DHHS to make a ruling and that for DHHS to do so, it would have to make findings of fact, which would be inappropriate in this proceeding for declaratory ruling. In this regard, the ruling found that "the Request lacks sufficient information and specificity to issue the ruling that Hope seeks." However, DHHS found that Hope did describe the "proposed transaction in enough detail to demonstrate that it would be a violation of the CON law if consummated in the manner described."

Based upon the information provided in Hope's request for declaratory ruling, the definition of N.C. Gen. Stat. § 131-176(16)(f1) is the most applicable to Hope's proposed project, and we will therefore address the application of this subsection.

Section 131E-176(16)(f1) states the following, in pertinent part:

HOPE-A WOMEN'S CANCER CTR., P.A. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[203 N.C. App. 276 (2010)]

(16) "New institutional health services" means any of the following:

. . . .

f1. The acquisition by purchase, donation, lease, transfer, or comparable arrangement of any of the following equipment by or on behalf of any person:

. . . .

5a. Linear accelerator.

. . . .

7. Magnetic resonance imaging scanner.

8. Positron emission tomography scanner.

9. Simulator.

N.C. Gen. Stat. § 131E-176(16)(f1) (2009).

DHHS found that in Hope's request for a declaratory judgment, "[t]he acquisition of any of the[] pieces of [E]quipment to be offered or developed in North Carolina by either Hope or the Provider . . . is subject to the requirement for a CON." DHHS ruled that "[a]cquiring the ability to provide services using the Equipment in the State of North Carolina pursuant to some arrangement with an out-of-state Provider, regardless of how it is labeled or packaged, is a comparable arrangement under N.C. Gen. Stat. §§ 131E-176(16)(f1) and 131E-178(b)." Hope contends that it was not proposing to *acquire* the Equipment by purchase, donation, lease, transfer, or comparable arrangement and that DHHS ignored rules of statutory construction.

First, the type of equipment that is to be furnished to Hope by the Provider is specifically enumerated under N.C. Gen. Stat. § 131E-176(16)(f1). Pursuant to the Services Agreement, Hope would receive a linear accelerator, magnetic resonance imaging scanner, positron emission tomography scanner, and a simulator. Secondly, DHHS correctly ruled that Hope was acquiring the Equipment through an arrangement which is "comparable" to a purchase, donation, lease, or transfer. Hope argues that because it would not have any ownership or property interest in the Equipment and because the Equipment would continue to be owned by the Provider, that it would not "acquire" the Equipment and that the Services Agreement is not a "comparable arrangement." We disagree.

HOPE-A WOMEN'S CANCER CTR., P.A. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[203 N.C. App. 276 (2010)]

"Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning. But where a statute is ambiguous, judicial construction must be used to ascertain the legislative will." *Burgess v. Your House of Raleigh*, 326 N.C. 205, 209, 388 S.E.2d 134, 136-37 (1990) (citations omitted). Therefore, the rules of statutory construction "are relevant . . . only in those instances in which the interpretation of the statute is ambiguous or in doubt." *Realty Corp. v. Coble, Sec. of Revenue*, 291 N.C. 608, 612, 231 S.E.2d 656, 659 (1977). However, "[t]he interpretation of a statute given by the agency charged with carrying it out is entitled to great weight." *Frye Reg'l Med. Ctr. v. Hunt*, 350 N.C. 39, 45, 510 S.E.2d 159, 163 (1999) (citation omitted).

We must determine the meaning of the word "acquisition" as it is used in N.C. Gen. Stat. § 131E-176(16)(f1). The statute states that an acquisition may occur by a purchase, donation, lease, transfer or a "comparable arrangement." An "acquisition" is defined by BLACK'S LAW DICTIONARY as "[t]he gaining of possession or control over something.". BLACK'S LAW DICTIONARY 24 (7th ed. 1999). Hope's Services Agreement falls within this definition, as it would give Hope possession of the Equipment and would permit Hope to use the Equipment to provide services to its patients. Hope's request for a declaratory ruling even stated that "the Provider [would] furnish to Hope [the Equipment] for the benefit of Hope's patients." Although Hope's possession of the Equipment may not be permanent and the Equipment's title may not be in Hope's name, the fact that the Equipment would be in Hope's possession and control to the extent that it were used to provide services to Hope's patients constitutes an "acquisition" in the plain meaning of the term.

The ruling that the Services Agreement is a "comparable arrangement" by which Hope would "acquire" the Equipment is also in keeping with the CON law's stated purpose. The purpose of the certificate of need law is "to control the cost, utilization, and distribution of health services[.]" *In re Denial of Request by Humana Hospital Corp.*, 78 N.C. App. 637, 646, 338 S.E.2d 139, 145 (1986). By requiring health care facilities to obtain a CON before providing new institutional health services, the General Assembly intended to "limit the construction of health care facilities [and the growth of new institutional health services] in this state to those that the public needs and that can be operated efficiently and economically for their benefit." *Humana*, 81 N.C. App. at 632, 345 S.E.2d at 237; *see also* N.C. Gen.

HOPE-A WOMEN'S CANCER CTR., P.A. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[203 N.C. App. 276 (2010)]

Stat. § 131E-175 (2009). One objective of the CON law is to limit and control what new institutional health services are offered in the state, and the Equipment to be used under the proposed Services Agreement is specifically identified in N.C. Gen. Stat. § 131E-176 (16)(f1). We see no reason not to give deference to DHHS's interpretation of the statute and its conclusion that "acquiring the ability to provide services using the Equipment in the State of North Carolina pursuant to some arrangement with an out-of-state provider, regardless of how it is labeled or packaged, is a comparable arrangement under N.C. Gen. Stat. § 131E-176(16)(f1) and 131E-178(b)." This interpretation is both logical and consistent with the purposes of the CON law. Accordingly, we conclude that the trial court did not err in affirming DHHS's ruling that Hope's proposal was an "acquisition" of equipment, and thus was governed by the CON law.

Because the trial court properly affirmed DHHS's ruling based upon N.C. Gen. Stat. § 131E-176(16)(f1), it is not necessary for us to address Hope's arguments as to why the Services Agreement does not constitute a "new institutional health service" under other subsections of N.C. Gen. Stat. § 131E-176(16), which Hope contends could potentially apply. Even if the Services Agreement did not fall under any of the other subsections, Hope would still be required to obtain a CON for the project based upon N.C. Gen. Stat. § 131E-176(16)(f1).

**[2]** In Hope's second argument, Hope contends that the trial court erred in affirming DHHS's ruling because DHHS's declaratory ruling denied Hope's request "not only for the reasons stated in the ruling, but also for 'additional bases' not discussed in the ruling." Hope argues that "[t]he Department's attempt to adopt these additional bases for its ruling was made upon unlawful procedure and was in substantial violation of Hope's right to meaningful appellate review." Accordingly, Hope argues that DHHS's ruling should be limited to the grounds set forth in the ruling itself. We disagree.

In its declaratory ruling, DHHS noted that the parties which opposed the request for a declaratory ruling, collectively known as the "Commentators," had provided "a number of useful analyses of the Request." The declaratory ruling stated that:

[a]ll of the Commentators have put forth theories and cited authority suggesting that I should deny the Request. I have considered all of the Comments as well as the arguments of Hope. To the extent the Commentators' theories and authority are not encompassed in the discussion above, it is not because they lack

HOPE-A WOMEN'S CANCER CTR., P.A. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[203 N.C. App. 276 (2010)] ·

merit, but rather because they constitute additional bases for denial of the Request.

N.C. Admin. Code tit. 10A, r. 14A.0103 provides that DHHS may request and consider comments from those who may be affected by the ruling in its consideration of a request for a declaratory ruling.

(f) A declaratory ruling procedure may consist of written submissions, oral hearings, or such other procedure as may be appropriate in a particular case.

(g) The Director may issue notice to persons who might be affected by the ruling that written comments may be submitted or oral presentations received at a scheduled hearing.

N.C. Admin. Code tit. 10A, r. 14A.0103(f)-(g) (June 2008). In accordance with Rule 14A.0103, DHHS received and considered comments from many Commentators, as noted above. The Commentators presented the legal arguments and authorities, some of which were similar and some of which differed from the arguments presented by others. As this was a declaratory ruling proceeding, there was necessarily no factual information provided by the Commentators. Hope did not object to the participation of the Commentators, to any of the particular comments provided by any Commentators, or to DHHS's consideration of those comments. Nor did Hope's petition for judicial review before the trial court take any exception to DHHS's consideration of any particular comments submitted. Hope's only exception related to the comments was:

It appears that DHHS, through the North Carolina Hospital Association, solicited the comments from the Commentators, knowing that the Commentators, the majority of which are hospitals, would be opposed to this request from Hope, a physician group. The Commentators, via the North Carolina Hospital Association, agreed that the Declaratory Ruling Request should be denied, and communicated their desire to DHHS that the Declaratory Ruling Request should be denied.

Thus, Hope appears to claim that DHHS was biased against it, as it objected only to DHHS's alleged selective "solicitation" of comments opposed to its request. Therefore, under N.C.R. App. P. Rule 10(a), this is the only issue regarding the comments which Hope has preserved for appeal before this Court. "To properly preserve a question for appellate review a party must request, and receive, a ruling on the question from the trial court. N.C.R. App. P. 10(b)(1) (2006)." *Bio-*

HOPE-A WOMEN'S CANCER CTR., P.A. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[203 N.C. App. 276 (2010)]

*Medical Applications of N.C., Inc. v. N.C. Dep't of Health & Human Servs.*, 179 N.C. App. 483, 487, 634 S.E.2d 572, 576 (2006).

Rule 14A.0103(g) provides that DHHS may "issue notice to persons who might be affected by the ruling" so that they may comment upon the requested declaratory ruling. Hope does not contend or argue that the Commentators were not "persons who might be affected by the ruling." Hope has not demonstrated that DHHS made its ruling "upon unlawful procedure" by its consideration of the comments. N.C. Gen. Stat. § 150B-51(3) (2009). Indeed, Hope acknowledges that "the record fails to disclose how the Commentators learned of Hope's request" but argues that "a reasonable inference from the circumstances is that DHHS notified them and solicited their views. Unfortunately, such off-the-record communications between Director Fitzgerald and incumbent providers, if they occurred here, would not be unprecedented."[2] Certainly, the trial court did not err by failing to make an "inference" of impropriety in DHHS's procedure where the record admittedly contains no indication of such impropriety.

Hope also argues that the bases for the ruling were unlawful because the ruling referenced the arguments of the Intervenors as "additional bases" for its determination, without specifying the exact argument upon which it relied. Hope argues:

> The Department purported to deny Hope's request not only for the reasons stated in the ruling, *but also* for "*additional bases*" not discussed in the ruling. By referring to *all* of the Intervenors' otherwise-unnamed "theories and authority" as "additional bases for denial," Department Director Fitzgerald attempted to incorporate *416 additional pages of argument against Hope* into his ruling. DHHS was so intent on denying Hope's request that *every* Intervenor's argument was deemed meritorious and every argument raised by Hope was deemed worthless."

We disagree with Hope's contention of the ruling as "incorporating" all 416 pages of the comments opposing its request. The ruling properly stated the legal bases for its denial of Hope's request, ad-

---

2. Hope is referring to *Mission Hosps., Inc. v. N.C. Dept. of Health & Human Services*, 189 N.C. App. 263, 272, 658 S.E.2d 277, 282 (2008), in which this Court held "that the Director's *ex parte* communication with petitioner's counsel in the preparation of the Final Agency Decision violated the plain language of N.C. Gen. Stat. § 150B-135 and that this violation constitutes an error of law under N.C. Gen. Stat. § 150B-51(b). . . ." However, in *Mission Hospitals*, the *ex parte* communications were clearly demonstrated in the record.

HOPE-A WOMEN'S CANCER CTR., P.A. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[203 N.C. App. 276 (2010)]

dressing each of Hope's arguments as to the four potential definitions of "new institutional health services," which could apply to its proposed project. Read in the context of the entire ruling, the disputed provision does not adopt any particular legal argument put forth by any Commentator other than those already addressed by the ruling; the disputed provision simply states that DHHS did fully consider the comments and that they support DHHS's ruling. This argument is also without merit.

[3] Lastly, Hope argues that the trial court erred in denying Hope's request for attorney's fees because an award of attorneys' fees would have been just and because DHHS acted without substantial justification. Hope contends that DHHS's "refusal to apply the law as it exists to the facts . . . are 'special circumstances' that support an award of attorney's fees." We disagree.

Hope argues that pursuant to N.C. Gen. Stat. § 6-19.1, because DHHS acted without substantial justification in pressing its claim against Hope, this supports an award of attorney's fees. N.C. Gen. Stat. § 6-19.1 (2009) provides:

> [i]n any civil action, other than an adjudication for the purpose of establishing or fixing a rate, or a disciplinary action by a licensing board, brought by the State or brought by a party who is contesting State action pursuant to G.S. 150B-43 or any other appropriate provisions of law, unless the prevailing party is the State, the court may, in its discretion, allow the *prevailing party* to recover reasonable attorney's fees, including attorney's fees applicable to the administrative review portion of the case, in contested cases arising under Article 3 of Chapter 150B, to be taxed as court costs against the appropriate agency if:
>
> (1) The court finds that the agency acted without substantial justification in pressing its claim against the party; and
>
> (2) The court finds that there are no special circumstances that would make the award of attorney's fees unjust.

(emphasis added). "[I]t is imperative to note that G.S. § 6-19.1 is not applicable, and cannot be used by [a party] to recover attorney's fees unless [the party is] found to be the prevailing party." *House v. Hillhaven, Inc.*, 105 N.C. App. 191, 195, 412 S.E.2d 893, 896 (1992). Necessarily, because Hope was not the prevailing party, we reject its argument. This assignment of error is overruled.

For the foregoing reasons, we affirm.

Affirmed.

Judges WYNN and STROUD concur.