710 S.E.2d 245 (2011)
EASTERN CAROLINA INTERNAL MEDICINE, P.A., Petitioner-Appellant
v.
NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF HEALTH SERVICE REGULATION, CERTIFICATE OF NEED SECTION, Respondent-Appellee.
No. COA09-1278.
Court of Appeals of North Carolina.
May 3, 2011.
*248 Attorney General Roy Cooper, by Assistant Attorney General Scott Stroud, for State.
Parker Poe Adams & Bernstein LLP, by Renee J. Montgomery, for petitioner-appellant.
Kirschbaum, Nanney, Keenan & Griffin, P.A., Raleigh, by Frank S. Kirschbaum & Chad Lorenz Halliday, for respondent-intervenor-appellee.
ERVIN, Judge.
Petitioner Eastern Carolina Internal Medicine, P.A., (ECIM) submitted an application for a Certificate of Need (CON) authorizing the purchase and operation of a mobile Magnetic Resonance Imaging scanner pursuant to N.C. Gen.Stat. § 131E-182 on 15 November 2007. Respondent Certificate of Need Section of the North Carolina Department of Health and Human Services (the Department) denied ECIM's application on the basis of a determination that ECIM had failed to show compliance with the applicable statutory review criteria on 28 April 2008. On 8 June 2009, the Department issued a Final Agency Decision upholding the CON Section's decision. After careful consideration of ECIM's numerous challenges to the Department's decision in light of the record and the applicable law, we conclude that the Department's decision should be affirmed.

I. Factual Background
ECIM is a physician-owned medical practice with offices located in Cape Carteret, Havelock, New Bern, and Pollocksville. On 15 November 2007, ECIM applied for the issuance of a CON with the CON Section of the Department seeking permission to acquire and operate a mobile MRI scanner for the purpose of providing intermittent service at locations within MRI Service Area 23. According to the applicable statutory provisions governing the issuance of CONs, the CON Section must determine whether an application satisfies the review criteria enumerated in N.C. Gen.Stat. § 131E-183(a).
The State Medical Facilities Plan (SHCC) is a health care planning document that is developed annually by the Department and *249 the State Health Coordinating Council, an advisory board comprised of physicians, hospital representatives, representatives of academic medical centers, members of the General Assembly, and other citizens appointed by the Governor. N.C. Gen.Stat. §§ 131E-176(17), 131E-176(25), and 131E-177(4). The Plan establishes the parameters applicable to the development of and need for regulated health services, equipment and facilities. In the event that the Plan provides that a certain service, facility, or piece of equipment is needed in a particular area, an individual or entity seeking to provide that service, facility, or piece of equipment is still required to seek and obtain a CON before providing that service or obtaining and operating that facility or piece of equipment. N.C. Gen.Stat. § 131E-178(a).
According to the Plan adopted for 2007, there was no need for additional service in MRI Service Area No. 23. However, the SHCC did plan to award a fixed MRI scanner in 2008 for the purpose of serving Craven, Jones, and Pamlico Counties. Even so, ECIM sought permission to purchase and operate a mobile MRI scanner, which it planned to use at its main office in Pollocksville three days a week and at its New Bern office two days a week.[1] In its application, ECIM indicated that the proposed mobile MRI scanner would primarily serve Carteret, Craven, Jones, Onslow, and Pamlico Counties, which generally qualify as rural areas.
On 14 January 2008, a public hearing was held to discuss the need for the proposed mobile MRI scanner. ECIM's application was reviewed by Project Analyst Ron Loftin. Craig Smith, the Assistant Chief of the CON Section, reviewed, edited and signed the CON Section's findings. By means of a letter dated 28 April 2008, the CON Section denied ECIM's application on the grounds that it did not conform to the statutory criteria enunciated in N.C. Gen.Stat. § 131E-183(a). More specifically, the CON Section found that the ECIM application did not comply with Review Criteria Nos. 3, 4, 5, 6, 8, 13(c), and 18(a), and related rules.
On 28 May 2008, ECIM filed a Petition for Contested Case Hearing challenging the validity of the CON Section's decision with the Office of Administrative Hearings.
On 19 June 2008, Coastal Carolina Healthcare, P.A., which owns and operates a fixed MRI scanner located in New Bern, successfully intervened in the contested case. A contested case hearing was held before Administrative Law Judge Joe L. Webster from 10 December through 12 December 2008.
On 12 February 2009, ALJ Webster issued a Recommended Decision in which he proposed that the CON Section's decision to deny ECIM's application be upheld. After the issuance of the Recommended Decision, the parties were given an opportunity to submit written arguments, exceptions and proposed Final Agency Decisions to the Department. On 8 June 2009, the Acting Director of the Division of Health Service Regulation, Jeff Horton, issued a Final Agency Decision on behalf of the Department denying ECIM's application. In its conclusions of law, the Department noted, among other things, that:
10. The Agency properly determined that the ECIM application did not conform with Criterion 3, which requires that an "applicant . . . identify the population to be served by the proposed project, and . . . demonstrate the need that this population has for the services proposed, and the extent to which all residents of the area, and, in particular, low income persons, racial and ethnic minorities, women, handicapped persons, the elderly, and other underserved groups are likely to have access to the services provided." N.C. Gen.Stat. § 131E-183(a)(3). ECIM failed to demonstrate the need the specific population it projects to serve has for the proposed mobile MRI scanner.
11. The Agency properly determined that the ECIM application did not conform with Criterion 13(c), because ECIM failed to demonstrate the contribution of the proposed service in meeting the health-related needs of the elderly and of members of *250 medically underserved groups, such as medically indigent or low income persons, Medicaid and Medicare recipients, racial and ethnic minorities, women, and handicapped persons, which have traditionally experienced difficulties in obtaining equal access to the proposed services, particularly those needs identified in the State Health Plan as deserving of priority.
12. The Agency properly determined that the ECIM application did not conform with Criterion 13(c), because ECIM failed to show that the elderly and the medically underserved groups identified in this subdivision will be served by the applicant's proposed services and the extent to which each of these groups is expected to utilize the proposed services.
13. The Agency properly determined that the ECIM application did not conform with Criterion 13(c), because ECIM failed to demonstrate that medically underserved populations will have adequate access to the proposed services because it did not adequately demonstrate how or why the payor mix for Medicare patients would remain essentially the same as it currently is with the mobile MRI scanner and the payor mix for Medicaid patients would increase 1,300 percent.
14. The Agency properly determined that the ECIM application did not conform with Criterion 4, because it failed to demonstrate that the least costly or most effective alternative has been proposed.
15. The Agency properly determined that the ECIM application did not conform with Criterion 5, because ECIM failed to demonstrate that financial and operational projections for the project demonstrate the availability of funds for capital and operating needs as well as the immediate and long-term financial feasibility of the proposal, based upon reasonable projections of the costs of and charges for providing health services by the person proposing the service. ECIM's projections of the number of MRI procedures to be performed in each of the first three operating years were unreasonably high, and its pro forma financial statements contained numerous other errors that made them inaccurate and unreliable projections.
16. The Agency properly determined that the ECIM application did not conform with Criterion 6, because ECIM failed to demonstrate that the proposed project will not result in unnecessary duplication of existing or approved health service capabilities or facilities.
17. The Agency properly determined that the ECIM application did not conform with Criterion 8, because ECIM failed to demonstrate that the provider of the proposed services will make available, or otherwise make arrangements for, the provision of the necessary ancillary and support services and that the proposed service will be coordinated with the existing health care system.
18. The Agency properly determined that the ECIM application did not conform with Criterion 18(a), because ECIM failed to demonstrate the expected effects of the proposed services on competition in the proposed service area, including how any enhanced competition will have a positive impact upon the cost effectiveness, quality, and access to the services proposed.
19. The Agency properly determined that the ECIM application did not conform with Regulatory Criteria 10 N.C.A.C. 14C.2703(a)(2), because ECIM failed to demonstrate annual utilization in the third year of operation is reasonably projected to be at least 3328 weighted MRI procedures on the proposed mobile MRI scanner.
20. The Agency properly determined that the ECIM application did not conform with Regulatory Criteria 10 N.C.A.C. 14C.2703(a)(3), because ECIM failed to ["]document the assumptions and provide data supporting the methodology used for each projection required in the rule." ECIM failed to provide adequate documentation to support each of its assumptions. ECIM did not state with sufficient clarity how it would achieve its goals set forth in its application. Retirement Villages, Inc. v. N.C. Department of Human Resources, 124 N.C.App. 495 [477 S.E.2d 697] (1996).

*251 21. The Agency properly determined that the ECIM application did not conform with Regulatory Criteria 10 N.C.A.C. 14C.2704(a), because ECIM failed to provide referral agreements between each host site and at least one other provider of MRI services in the geographic area to be served by the host site, to document the availability of MRI services if patients require them when the mobile unit is not in service at the host site.
ECIM noted an appeal from the Final Agency Decision to this Court.

II. Legal Analysis

A. Standard of Review
The procedures utilized in reviewing applications for the issuance of a CON are well-established. According to N.C. Gen.Stat. § 131E-182(b), a person seeking to obtain the issuance of a CON must make "application. . . on forms provided by the Department." After compliance with the procedural requirements specified in N.C. Gen.Stat. § 131E-185 and utilizing the criteria outlined in N.C. Gen.Stat. § 131E-183(a), "the Department shall issue a decision to `approve,' `approve with conditions,' or `deny,' an application for a new institutional health service." N.C. Gen.Stat. § 131E-186(a). "Within five business days after it makes a decision on an application, the Department shall provide written notice of all the findings and conclusions upon which it based its decision, including the criteria used by the Department in making its decision, to the applicant." N.C. Gen.Stat. § 131E-186(b).
"The review procedure set forth in [the CON] law allows for the agency to make an initial decision as to whether an applicant is entitled to a certificate of need." Britthaven, Inc. v. N.C. Dept. of Human Resources, 118 N.C.App. 379, 381, 455 S.E.2d 455, 458, disc. review denied, 341 N.C. 418, 461 S.E.2d 754 (1995) (citing N.C. Gen.Stat. § 131E-186(a)). The agency's decision to approve, approve with conditions, or deny an application for a CON must be based upon its determination as to whether the applicant has complied with the statutory review criteria set out in N.C. Gen.Stat. § 131E-183(a) and, in this case, the administrative regulations governing the administration of the CON program, 10A N.C.A.C. 14C.2703 et seq. An applicant for the issuance of a CON has the burden of demonstrating compliance with the review criteria enumerated in N.C. Gen. Stat. § 131E-183. See Presbyterian-Orthopaedic Hosp. v. N.C. Dept. of Human Resources, 122 N.C.App. 529, 534, 470 S.E.2d 831, 834 (1996), review improvidently granted, 346 N.C. 267, 485 S.E.2d 294 (1997).
"After a decision by the Department to issue, deny or withdraw a certificate of need . . ., any affected person . . . shall be entitled to a contested case hearing under Article 3 of Chapter 150B of the General Statutes." N.C. Gen.Stat. § 131E-188(a). A petition initiating a contested case convened for the purpose of challenging a decision by the CON Section
shall state facts tending to establish that the agency named as the respondent has deprived the petitioner of property, has ordered the petitioner to pay a fine or civil penalty, or has otherwise substantially prejudiced the petitioner's rights and that the agency:
(1) Exceeded its authority or jurisdiction;
(2) Acted erroneously;
(3) Failed to use proper procedure;
(4) Acted arbitrarily or capriciously;
(5) Failed to act as required by law or rule.
N.C. Gen.Stat. § 150B-23(a). "Under Chapter 150B, a petitioner is afforded a full adjudicatory hearing before the ALJ, including an opportunity to present evidence and cross examine witnesses." Britthaven, 118 N.C.App. at 382, 455 S.E.2d at 459 (citing N.C. Gen.Stat. § 150B-23(a) and N.C. Gen. Stat. §§ 150B-25(c) and (d)). After the hearing, "the [ALJ] shall make a recommended decision or order that contains findings of fact and conclusions of law." N.C. Gen.Stat. § 150B-34(c). "Under N.C. Gen. Stat. § 150B-23(a), the ALJ is to determine whether the petitioner has met its burden in showing that the agency substantially prejudiced petitioner's rights, and that the agency also acted outside its authority, acted erroneously, *252 acted arbitrarily [or] capriciously, used improper procedures, or failed to act as required by law or rule." Britthaven, 118 N.C.App. at 382, 455 S.E.2d at 459 (citing N.C. Gen.Stat. § 150B-23(a)). As a result, the purpose of the ALJ's determination in a CON case is to review the correctness of the Department's decision utilizing the standards enunciated in N.C. Gen.Stat. § 150B-23(a) rather than to engage in a de novo review of the evidentiary record. Britthaven, 118 N.C.App. at 382, 455 S.E.2d at 459 (rejecting a litigant's contention that the initiation of a contested case proceeding before the Office of Administrative Hearings "commenced a de novo proceeding by the ALJ intended to lead to the formulation of the final decision," since the role of the ALJ under the applicable statutory provisions is "to determine whether the petitioner has met its burden" in showing that the agency decision substantially prejudiced the petitioner's rights and is subject to reversal for one of the reasons listed in N.C. Gen.Stat. § 150B-23(a)).
After the issuance of the ALJ's decision, "[a] final decision shall be made by the agency in writing after review of the official record as defined in [N.C. Gen.Stat. § ] 150B-37(a) [which] shall include findings of fact and conclusions of law" and "recite and address all of the facts set forth in the recommended decision." N.C. Gen.Stat. § 150B-34(c). "Any affected person who was a party in a contested case hearing shall be entitled to judicial review of all or any portion of a final decision of the Department" by means of an appeal to this Court pursuant to N.C. Gen.Stat. § 7A-29(a). N.C. Gen.Stat. § 131E-188(b).
"In reviewing a CON determination:
[m]odification or reversal of the agency decision is controlled by the grounds enumerated in [N.C. Gen.Stat.] § 150B-51(b); the decision, findings, or conclusions must be:
(1) In violation of constitutional provisions;
(2) In excess of the statutory authority or jurisdiction of the agency;
(3) Made upon unlawful procedure:
(4) Affected by other error of law;
(5) Unsupported by substantial evidence admissible under [N.C. Gen.Stat. §§ ] 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
(6) Arbitrary and capricious."
Parkway Urology v. NCDHHS, ___ N.C.App. ___, ___, 696 S.E.2d 187, 192 (2010), disc. review denied, ___ N.C. ___, 705 S.E.2d 739, 705 S.E.2d 753 (2010) (quoting Total Renal Care of N.C., LLC v. N.C. Dep't of Health & Human Services, 171 N.C.App. 734, 739, 615 S.E.2d 81, 84 (2005) (quoting N.C. Gen.Stat. § 150B-51(b) (1999)[2])); see also Dialysis Care of N.C., LLC v. N.C. Dep't of Health & Human Servs., 137 N.C.App. 638, 645, 529 S.E.2d 257, 261, aff'd per curiam, 353 N.C. 258, 538 S.E.2d 566 (2000).[3]
The standard of review of an administrative agency's final decision is dictated by the substantive nature of each assignment of error. N.C. Dep't of Env't & Natural Res. v. Carroll, 358 N.C. 649, 658-59, 599 S.E.2d 888, 894 (2004) (detailing the standard of review for reversing or modifying an agency's decision under the six grounds specified by N.C.G.S. § 150B-51(b) and classifying those grounds into "law-based" or "fact-based" inquiries); Total Renal Care of N.C., L.L.C. v. N.C. HHS [DHHS], 171 N.C.App. 734, 737-39, 615 S.E.2d 81, 83-84 (2005) (detailing the interplay of the *253 CON statutes with the 1999 Administrative Procedures Act).
Good Hope Health Sys., L.L.C. v. N.C. Dep't of Health & Human Serv., 189 N.C.App. 534, 543, 659 S.E.2d 456, 462, aff'd per curiam, 362 N.C. 504, 666 S.E.2d 749 (2008). If an appellant asserts that the Department's final decision rests upon an error of law, this Court conducts a de novo analysis. Good Hope, 189 N.C.App. at 543, 659 S.E.2d at 462. Fact-intensive issues, such as sufficiency of the evidence to support a particular finding of fact or allegations that a particular decision is arbitrary or capricious, are reviewed using the whole record test. Dialysis Care, 137 N.C.App. at 646, 529 S.E.2d at 261. "The `whole record' test does not operate as a tool of judicial intrusion into the administrative decision-making process; instead, it gives a reviewing court the capability to determine whether an administrative decision is rationally based in the evidence." Hospital Group of Western N.C., v. N.C. Dept. of Human Resources, 76 N.C.App. 265, 268, 332 S.E.2d 748, 751 (1985) (quoting In re Rogers, 297 N.C. 48, 65, 253 S.E.2d 912, 922 (1979)). Put another way, "[w]e should not replace the agency's judgment as between two reasonably conflicting views, even if we might have reached a different result if the matter were before us de novo." Dialysis Care, 137 N.C.App. at 646, 529 S.E.2d at 261. We now utilize this standard of review to analyze the validity of Petitioner's challenge to the Final Agency Decision.

B. Specific Challenges to the Final Agency Decision

1. Compliance with N.C. Gen.Stat. § 150B-23
In its first challenge to the Department's decision, ECIM contends that the Department failed to properly apply the standards articulated in N.C. Gen.Stat. § 150B-23(a) in reviewing the CON Section's decision. More particularly, ECIM contends that, rather than considering all of the ways in which the CON Section failed to comply with the applicable statutes and regulations, the Department merely considered "`[w]hether the [CON Section] acted within its authority or jurisdiction in disapproving the CON application of ECIM.'" According to ECIM, despite "substantial testimony and other evidence to support its claims that the CON Section's decision violated each of the standards of N.C. [Gen.Stat.] § 150B-23(a)," the Department failed to address the applicable standards altogether and, on the contrary, merely addressed the issue of whether the CON Section's decision was "arbitrary or capricious." Moreover, ECIM argues that the Department compounded this error by affording a presumption of correctness to the CON Section's decision. We do not find ECIM's argument persuasive.
According to N.C. Gen.Stat. § 150B-23(a), ECIM was required, in order to successfully challenge the CON Section's decision, to demonstrate that the CON Section's decision "substantially prejudiced" its rights and that the CON Section "[e]xceeded its authority or jurisdiction," "[a]cted erroneously," "[f]ailed to use proper procedure," "[a]cted arbitrarily or capriciously," or "[f]ailed to act as required by law or rule." According to the allegations of ECIM's petition, the CON Section's decision was subject to reversal for each of the reasons specified in N.C. Gen. Stat. § 150B-23(a).
More particularly, ECIM alleged in its petition that the CON Section erred in denying its application for the following reasons:
8. In making its decision to deny ECIM's application[,] the CON Section exceeded its authority or jurisdiction, acted erroneously, failed to use proper procedure, acted arbitrarily and capriciously, and failed to act as required by law or rule. The CON Section has substantially prejudiced ECIM's rights by not approving ECIM's CON application. Based upon its knowledge at the present time, the facts supporting ECIM's contentions are set forth below. Because ECIM has not yet had the opportunity to conduct discovery in this matter with regard to the review at issue, it expressly reserves the right to rely upon additional facts and theories.
9. The CON Section erred in failing to properly consider many important facts about the proposal of ECIM. ECIM reserves *254 the right to allege additional errors as they become known through discovery. The CON Section's decision states arbitrary and unsubstantiated reasons for denying ECIM's application. The CON Section failed to conduct a proper and fair analysis of ECIM's application and violated the standards of N.C. [Gen.Stat.] § 150B-23 in at least the following respects:
a. The Agency incorrectly determined that ECIM's application did not conform to statutory review criterion set forth In N.C. [Gen.Stat.] § 131E-183(a)(3). The CON Section failed to properly consider ECIM's extensive community and physician support. The CON Section also failed to consider the increased MRI services to Medicaid beneficiaries that would result from ECIM's ownership of a mobile MRI.
b. The CON Section erroneously determined that ECIM's application did not conform with N.C. [Gen.Stat.] § 131E-183(a)(4). The CON Section incorrectly based its conclusion concerning Criterion 4 on arbitrary and erroneous analysis and information involving Criteria 3, 5, 6, 7, and 10A N.C.A.C. 14C.2700.
c. The CON Section erroneously determined that ECIM's application did not conform with N.C. [Gen.Stat.] § 131E-83(a)(5). The CON Section failed to consider all relevant information concerning ECIM's current and future financial situation and the substantial community and physician support for the project. The CON Section arbitrarily and erroneously determined that ECIM's projections of the number of MRI procedures to be performed in each of the first three operating years were unreasonably high, even though its projections are consistent with its current mobile experience.
d. The Agency erroneously determined that ECIM's application did not conform with N.C. [Gen.Stat.] § 131E-183(a)(6) because of Criterion 3. ECIM's application fully conforms with Criterion 3.
e. The CON Section erroneously determined that ECIM's application did not conform with N.C. [Gen.Stat.] § 131E-183(a)(8). Several of the physicians at ECIM currently have privileges at Craven Regional Medical Center and therefore the ability to make referrals will be unchanged. In addition, ECIM has a transfer agreement with Craven Regional Medical Center, a provider of MRI services, which was known to the CON Section. Furthermore, to the extent that Criterion 8 requires an applicant to provide referral agreements with a competitor before a CON is issued, ECIM contends such a requirement is arbitrary and unreasonable.
f. The Agency erroneously determined that ECIM's application did not conform with N.C. [Gen.Stat.] § 131E-183(a)(13)(c). However, ECIM's application adequately shows that elderly and other medically underserved groups will be served by the proposed mobile MRI. The CON Section states arbitrary and unsupported reasons for determining that ECIM did not meet the requirements of this criterion.
g. The CON Section erroneously determined that ECIM's application did not conform with N.C. [Gen.Stat.] § 131E-183(a)(18a). The CON Section based its conclusion on incorrect and arbitrary analyses and assumptions concerning Criteria 3, 5, and 6.
h. The CON Section erroneously determined that ECIM's application failed to conform or conditionally conform with all the special criteria of 10A N.C.A.C.l4C.2700, et seq. As set forth above, ECIM's application adequately demonstrated need and the availability of a referral arrangement with another provider of MRI services in its proposed service area.
ECIM's argument, as we understand it, suggests that, rather than determining the validity of each of its specific challenges to the CON Section's decision on the basis of the criteria set out in N.C. Gen.Stat. § 150B-23(a), the Department should have systematically asked itself first, whether the CON Section's decision "[e]xceeded its authority or jurisdiction" and then moved through each of the other grounds for reversal set out in N.C. Gen.Stat. § 150B-23(a). We do not believe that the applicable statutory provisions contemplate *255 the use of such a process. Instead, the literal language of N.C. Gen.Stat. § 150B-23(a), which requires a petitioner such as ECIM to "state facts tending to establish" that the agency acted unlawfully for one or more of the specific reasons set out in that subsection, contemplates a process under which ECIM was required to allege that the CON Section's decision was unlawful in one or more specific ways, with those allegations serving to focus subsequent review by the ALJ and the Department. Thus, we do not believe that the approach implicit in ECIM's first argument is consistent with the applicable statutory provisions.
Similarly, ECIM's complaint that the Department impermissibly awarded a presumption of validity to the CON Section's decision cannot be squared with applicable provisions of North Carolina law. According to N.C. Gen.Stat. § 150B-29(a), ECIM was required to establish that the CON Section's decision was subject to reversal under one or more of the standards enumerated in N.C. Gen.Stat. § 150B-23(a) in order to mount a successful challenge to the CON Section's decision. Britthaven, 118 N.C.App. at 382, 455 S.E.2d at 460. As the Department correctly noted, in light of the fact that ECIM bore the burden of proving error in the CON Section's decision, there is a presumption that "an administrative agency has properly performed its official duties." In re Community Association, 300 N.C. 267, 280, 266 S.E.2d 645, 654 (1980). Thus, the Department did not err by presuming that the CON Section acted in accordance with applicable law.
Finally, we are unable to accept ECIM's argument that the Department erred by reviewing the CON Section's decision utilizing an "arbitrary and capricious" standard instead of considering all of the grounds for error outlined in N.C. Gen.Stat. § 150B-23(a). There are two fundamental problems with ECIM's argument to this effect. First, many of the errors alleged in ECIM's petition rest upon a contention that the CON Section acted in an arbitrary and capricious manner. For example, Paragraph Nos. 9(b), (c), (d), (e), (f), and (g) specifically assert that the CON Section acted arbitrarily. Thus, to the extent that ECIM alleged that the CON Section acted arbitrarily and capriciously, the Department did not err by utilizing that standard of review. Secondly, although the Department's conclusion to the effect that the presumption that the CON Section acted properly could be "rebutted only by a showing that the Agency was arbitrary or capricious in its decision making" is erroneous to the extent that it suggests that the "arbitrary and capricious" standard was the only one with a potential applicability to this proceeding, we do not believe that the language upon which ECIM relies indicates that the Department confined itself to the use of the "arbitrary and capricious" standard of review. Immediately after the series of legal conclusions upon which this aspect of ECIM's argument rests, the Department stated that "North Carolina law. . . gives great deference to an agency's interpretation of a law it administers." Based upon the presence of this language in the Department's decision, it is clear that the Department recognized that "law-based" challenges to a decision made by the CON Section were not subject to review under an "arbitrary and capricious standard." Moreover, a careful analysis of the remainder of the Department's decision indicates that it addressed each issue raised by ECIM utilizing the correct standard, and ECIM has not shown otherwise. As a result, ECIM is not entitled to relief based upon its challenges to the manner in which and standards under which the Department reviewed the CON Section's decision.

2. Necessity for Compliance With All CON Criteria
Secondly, ECIM challenges the Department's determination that a successful CON application must comply with all of the review criteria set forth in N.C. Gen.Stat. § 131E-183(a). In arguing that the Department's conclusion of law to this effect is directly contradicted by N.C. Gen.Stat. § 131E-186(a) (stating that "the Department shall issue a decision to `approve,' `approve with conditions,' or `deny,' an application. . . ."), ECIM relies on our decision in Dialysis Care, 137 N.C.App. at 650, 529 *256 S.E.2d at 264. Once again, we conclude that ECIM's argument lacks merit.
N.C. Gen.Stat. § 131E-183(a) provides that the Department "shall determine that an application is either consistent with or not in conflict with [the] criteria [listed in the statute] before a[CON] for the proposed project shall be issued." In Dialysis Care, Bio-Medical Applications of North Carolina, Inc. (BMA), and others sought the issuance of a CON authorizing the establishment of a kidney dialysis facility in Kannapolis. Id. The CON Section conditionally approved the application because of its non-compliance with N.C. Gen.Stat. § 131E-183(a)(5), which requires a showing that adequate funds are available for the capital and operating needs of the proposed facility. Id. at 643, 529 S.E.2d at 260. Although BMA submitted a letter confirming the existence of a financial commitment for a portion of the project, the CON Section conditioned approval of the requested CON upon its ability to document that it had the ability to pay the remaining costs. Id. at 646, 529 S.E.2d at 262. The purpose of the condition imposed upon BMA was to confirm its ability to satisfy one the required statutory criteria. In other words, the CON Section decided to conditionally approve BMA's application based upon its determination that, once the relevant documentation had been provided, BMA had demonstrated its compliance with the criteria set forth in N.C. Gen.Stat. § 131E-183. Id. Thus, the effect of the decision to conditionally approve BMA's application was to allow BMA, after having shown a need for the proposed facility, to come into compliance with all of the required statutory criteria. In the present case, however, both the CON Section and the Department found the existence of numerous deficiencies in ECIM's application, including a failure to demonstrate a need for the proposed scanner. The record contains no indication that the Department acted unreasonably by simply denying ECIM's application rather than approving it subject to some sort of unspecified condition. As a result, given the absence of any indication that the challenged language had any adverse impact on ECIM, we find no error in the Department's conclusion that "a CON application must satisfy all of the review criteria set forth in N.C. Gen.Stat. § 131E183(a)" and that, "[i]f an application fails to conform with any one of these criteria, then the applicant is not entitled to a CON for the proposed project as a matter of law."

3. Failure to State Specific Reasons for Rejecting ALJ Findings
Thirdly, ECIM contends that the Department erred by failing to set forth specific reasons explaining its decision to refrain from adopting certain findings of fact made by ALJ Webster. N.C. Gen.Stat. § 150B-34(c) provides, in pertinent part, that:
A final decision shall be made by the agency in writing after review of the official record as defined in [N.C. Gen.Stat.] § 150B-37(a) and shall include findings of fact and conclusions of law. The final agency decision shall recite and address all of the facts set forth in the recommended decision. For each finding of fact in the recommended decision not adopted by the agency, the agency shall state the specific reason, based on the evidence, for not adopting the findings of fact and the agency's findings shall be supported by substantial evidence admissible under [N.C. Gen.Stat.] §§ 150B-29(a), 150B-30, or 150B31.
The Department's decision included a section entitled "Reasons for Modifying the ALJ's Decision," in which the Department stated that:
1. I adopt the following Findings of Fact contained in the Recommended Decision in whole: 1-11, 22, 24, 31-32, 35, 37-38, 40, 42, 44, 46-49. I expressly reject the remaining Findings of Fact because they are unsupported by the clear preponderance of the evidence in this case. The above-listed adopted Findings of Fact are restated and renumbered as set forth in this Final Agency Decision.
2. I reject Conclusions of Law 16 on the grounds that it is not supported by law or evidence.
3. I add the additional Findings of Fact and Conclusions of Law contained herein because they further evidence the ECIM *257 Application's failure to conform with applicable statutory and regulatory review criteria.
In arguing that the Department's decision does not comply with N.C. Gen.Stat. § 150B-34(c), ECIM cites Mission Hosps., Inc. v. N.C. Dep't of Health & Human Servs., 189 N.C.App. 263, 275-76, 658 S.E.2d 277, 284 (2008), for the proposition that N.C. Gen. Stat. § 150-34(c) requires the Department to make a specific statement relating to each rejected finding of fact and that any failure on the part of the Department to do so deprives ECIM of the right to "meaningful appellate review." We do not find this argument persuasive.
In the decision at issue in Mission Hospitals, the Department failed to state any reasons for declining to adopt certain of the ALJ's findings of fact. Id. at 275, 658 S.E.2d at 284. Moreover, the Department declined to adopt certain findings and conclusions which it deemed "immaterial" or "irrelevant" to the substantive issues it believed that it was required to consider. Id. The Mission Hospitals Court noted that the relevant statutory language did not provide that the statement of the specific reasons that led the agency to refrain from adopting the findings and conclusions in question had to be supported by substantial evidence; instead, we noted that the statutory language simply required the Department to state its reasons for not adopting the findings in question.
In its decision in this case, the Department clearly indicated which of ALJ Webster's findings it adopted and which it declined to adopt before stating that the rejected findings were "unsupported by the clear preponderance of the evidence in this case." Contrary to the argument advanced in ECIM's brief, N.C. Gen.Stat. § 150B-34(c) does not require the Department to state its reasons for rejecting each ALJ finding separately. The adoption of such a requirement would elevate form over substance. The obvious purpose of the specific provision of N.C. Gen.Stat. § 150B-34(c) at issue here is to ensure that a reviewing court and all interested parties understand the Department's reasons for rejecting particular findings of fact made by the ALJ. This purpose can be achieved without the adoption of a "finding by finding" requirement of the type for which ECIM appears to contend. As a result of the fact that the Department specifically stated its reason for not adopting certain of the ALJ's findings and since its statement sufficiently apprises both this Court and the parties of the reasons for the Department's decision, we conclude that the Department sufficiently complied with N.C. Gen.Stat. § 150B-34(c) and that ECIM's argument to the contrary lacks merit. See Total Renal Care, 171 N.C.App. at 736, 615 S.E.2d at 82 (holding that the Department's statement that its own findings "more accurately reflect the evidence in the record and a proper implementation of the [CON] Law" constituted an adequate statement of its reasons for declining to adopt the ALJ's findings of fact).

4. Sufficiency of the Department's Findings
Fourthly, ECIM challenges the sufficiency of the Department's findings concerning the extent to which its application failed to satisfy the statutory criteria for the issuance of a CON set out in N.C. Gen.Stat. § 131E-183(a). In essence, ECIM argues that, since many of the Department's findings are couched in terms of what the CON Section "found," it failed to independently find the facts necessary to determine whether the requested CON should have been issued. We do not believe that, given the facts of this case, ECIM is entitled to relief on the basis of this argument.
As we have already indicated, the statutorily authorized administrative review of a CON Section decision is intended to consist of an examination of the correctness of the CON Section's decision rather than a de novo examination of the merits of the original application. Britthaven, 118 N.C.App. at 382, 455 S.E.2d at 459. For that reason, the ultimate issue before the ALJ and the Department was whether the CON Section correctly concluded that ECIM failed to satisfy the approval criteria set out in N.C. Gen. Stat. § 131E-183(a). The challenged findings, which clearly focus on what the CON Section found, are consistent with this understanding *258 of the purpose of administrative review of a CON Section decision. Having provided ECIM with an opportunity to challenge the validity of the CON Section's findings, upholding the CON Section's decision coupled with a recitation of a finding made by the CON Section necessarily amounts to a determination that ECIM's challenge to that decision lacked merit. As a result, given the nature of the administrative review process at issue here, we do not believe that the form of the challenged findings of fact provides a sufficient basis for overturning the Department's decision.
In addition, a careful reading of the Department's decision makes it completely clear that the Department was not simply reciting the determinations made by the CON Section in the challenged findings of fact. Instead, the Department clearly adopted the CON Section's determinations as its own. For example, ALJ Webster made Finding of Fact No. 12 in his Recommended Decision:
12. The Agency found the ECIM application nonconforming with Criterion 3 based upon the fact that ECIM does not state specifically that it needs additional capacity and or that it has been denied additional days of service by the provider of its current mobile scanner beyond that available. (Agency File, Pet. Exhibit 2, p. 102). The undersigned finds as a fact and as a matter of law that Criterion 3 does not require ECIM to prove either of these findings and is insufficient for the Agency to find that ECIM's application did not conform to Criterion 3.
In its decision, on the other hand, the Department found that:
12. Respondent found the ECIM application does not state specifically that it needs additional capacity and or that it has been denied additional days of service by the provider of its current mobile scanner beyond that available. (Agency File, Pet. Exhibit 2, p. 102).
In that portion of its decision discussing the reasons for rejecting certain of ALJ Webster's findings, the Department stated that it rejected these findings "because they are unsupported by the clear preponderance of the evidence in this case" and indicated that the "adopted Findings of Fact are restated and renumbered as set forth in this Final Agency Decision." As this language makes clear, the effect of the Department's rewrite of the ALJ's findings was to include in its final decision only that factual material that it believed had adequate record support.[4] Our conclusion to this effect is bolstered by our determination that the record does not appear to indicate that the factual statements made by the CON Section in the challenged findings are in serious dispute. Instead, as we understand the record, the real issue arising from these findings is the legal significance to be afforded to the factual determinations that they contain, which is a separate and distinct question from their factual accuracy. Thus, in light of the purpose of the requirement that the Department make findings of fact and conclusions of law in its final decision and the language in which the Department's final decision is couched, we conclude that ECIM is not entitled to obtain relief from the Department's decision based solely on the form of the challenged findings of fact.[5]

5. Sufficiency of the Department's Need Finding
Next, ECIM challenges the adequacy of the Department's conclusion that ECIM's application did not satisfy the statutory criterion enunciated in N.C. Gen.Stat. § 131E-183(a)(3). Although the full scope of *259 ECIM's challenge to the Department's determination with respect to Criterion No. 3 is not entirely clear, we interpret ECIM's brief to contend that the Department failed to adequately address certain challenges that ECIM advanced to the CON Section's determination[6] and that ECIM adequately demonstrated a need for the proposed mobile MRI scanner based on physician referral estimates, demographic data, patient surveys, community support, the current level at which its physicians utilized the Alliance MRI scanner[7], and the fact that its physicians faced a two-week wait time to obtain MRI scans for patients. Reduced to its essentials, ECIM's argument amounts to a contention that the Department made certain findings that lacked adequate evidentiary support and that the Department did not give proper weight to the testimony upon which it relied in attempting to demonstrate the existence of the requisite need for the proposed mobile MRI scanner. As a result, to the extent that ECIM's argument rests on a contention that the Department's findings lack adequate evidentiary support or that it failed to make findings in accordance with the undisputed record evidence, it is really arguing that the Department's decision was not supported by the evidence or was arbitrary or capricious, thus triggering application of the "whole record test." Dialysis Care, 137 N.C.App. at 646, 529 S.E.2d at 261. In applying this test, we must examine the entire record in order to determine whether the Agency's decision is supported by substantial evidence, which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Craven Reg'l Med. Auth. v. N.C. Dep't of Health & Human Servs., 176 N.C.App. 46, 52, 625 S.E.2d 837, 841 (2006) (quoting Blalock v. N.C. Dep't of Health & Human Servs., 143 N.C.App. 470, 475, 546 S.E.2d 177, 180 (2001)).
In concluding that ECIM's application did not satisfy Criterion No. 3, the Department made the following findings of fact:
11. Criterion 3 requires that an "applicant. . . identify the population to be served by the proposed project, and . . . demonstrate the need that this population has for the services proposed, and the extent to which all residents of the area, and, in particular, low income persons, racial and ethnic minorities, women, handicapped persons, the elderly, and other underserved groups are likely to have access to the services proposed." N.C. Gen.Stat. § 131E-183(a).
12. Respondent found the ECIM application does not state specifically that it needs additional capacity and or that it has been denied additional days of service by *260 the provider of its current mobile scanner beyond that available. (Agency File, Pet. Exhibit 2, p. 102.)
13. Respondent found the ECIM application states that its Medicare and Medicaid patients cannot be served on ECIM's service contracted mobile MRI scanner because of Stark restrictions, while in another section of the application ECIM reports that 35 percent of the procedures it performed on the mobile MRI service scanner were Medicare patients and ECIM proposes serving a comparable percentage on its proposed mobile MRI scanner. (Agency File, Pet. Exhibit 2, p. 102.)
14. Respondent found the ECIM application does not demonstrate how or why Medicaid and Medicare will increase nearly three times ECIM's current amount. (Agency File, Pet. Exhibit 2, p. 102.)
15. Respondent found that ECIM does not currently provide mobile MRI scanner services at its New Bern office and does not provide sufficient documentation that it, as a new MRI provider in Craven County, could achieve 13 percent of the Craven County market in its first year. (Agency File, Pet. Exhibit 2, p. 106.)
16. Respondent found that ECIM provided insufficient utilization of mobile MRI services in 2007 upon which to base its projected ability to capture a 13 percent share of the Craven County MRI market. (Agency File, Pet. Exhibit 2, p. 106.)
17. Respondent found that ECIM does not document how it could achieve a 13 percent market share in Craven County, a 12.7 percent share in Pamlico County, and a 10.8 percent market share in Carteret County in light of the upcoming development of two additional fixed MRI scanners. (Agency File, Pet. Exhibit 2, p. 106.)
18. Respondent found that ECIM does not demonstrate the reasonableness of the assumption of its proposal to increase the number of days of service per year to 250 and increase the number of MRI procedures to be performed to 3,000 in 2009 because it does not provide data as to the need for service by county and did not provide the number of Medicare/Medicaid patients that ECIM physicians had referred to other MRI scanners in the service area. (Agency File, Pet. Exhibit 2, p. 106.)
19. Respondent found that ECIM does not provide letters from physicians in the proposed service area specifying where they will refer patients in order to support the "nearly 700 annually" referrals it estimates in referrals from these physicians. (Agency File, Pet. Exhibit 2, p. 107.)
20. Respondent found that ECIM does not provide an endorsement letter from the ECIM physicians providing information about which of the six ECIM offices the individual physician works in or to which of the two proposed MRI sites their patients would be referred in order to support the more than 3,000 patients the practice estimates it would refer to the proposed scanner annually. (Agency File, Pet. Exhibit 2, p. 107.)
21. Respondent found that ECIM does not provide data as to the number of potential patients who are not living "close-in to New Bern" or an estimate of the number of patients that ECIM New Bern physicians are currently having to send elsewhere for MRI scans. (Agency File, Pet. Exhibit 2, p. 107.)
22. Based upon its findings in Paragraphs 11-21 above, Respondent found the ECIM Application nonconforming with Criterion 3.
23. Patients of ECIM physicians wait two weeks to receive MRI studies at ECIM MRI facilities. (Hearing Tr. Vol. 2, 333, December 11, 2008.) ECIM has not attempted to determine whether this waiting period could be avoided by making use of other MRI services available in the service area. (Hearing Tr. Vol. 1, 39-40, 75, December 10, 2008; Hearing Tr. Vol. 2, 333, December 11, 2008; Exhibit 1, p. 43, 144; Gilgo Dep. 36:9-16, December 2, 2008.)
Based upon these findings of fact, the Department concluded that ECIM had not satisfied Criterion 3 because it "failed to demonstrate the need the specific population it projects to serve has for the proposed mobile MRI scanner."

*261 a. Failure to Credit ECIM's Need Showing

In challenging the Department's conclusion concerning Criterion No. 3, ECIM argues that the Department did not properly consider the evidence offered in support of its need showing. We disagree.
According to ECIM, the need for the mobile MRI service was demonstrated, in part, by physician letters that included projections that the proposed service would generate 3,821 referrals by the end of the first year of operation. The referral projections, according to ECIM, exceeded the number of projected procedures required under the mobile MRI performance standards detailed in 10A N.C.A.C. 14C.2703(a)(2). According to ECIM, such physician referral letters constitute the "gold standard" that should be utilized in making determinations of need and should have been given great weight in the Department's decision-making process. On the other hand, the Department determined that the letters in question did not identify the location of the authoring physicians or identify the MRI sites to which these referrals would be made. In other words, the Department concluded that the referral evidence was not relevant to the issue before it, which was the actual use that would be made of the proposed mobile MRI scanner. As a result, this aspect of ECIM's argument amounts to a contention that the Department should have made a different credibility judgment than the one it actually made. This contention does not support an award of appellate relief given that the Department had a rational basis for rejecting this aspect of ECIM's argument.
Secondly, ECIM argues that the demographic information that it presented, which focused on population growth and growth in the number of MRI scans, including the extent to which the population in the relevant service area consisted of individuals who were 65 years old and older, demonstrated the need for the proposed mobile MRI scanner. However, such evidence is only relevant to the extent that sufficient scanning capability does not otherwise exist. No such showing appears to have been made here, particularly given the likelihood that a new fixed MRI scanner would begin to serve the relevant area in the near future. As a matter of basic logic, the showing needed to satisfy Criterion No. 3 for purposes of this proceeding requires a consideration of both the demand for the service in question in the relevant area and the extent to which that demand could be satisfied without the proposed mobile MRI scanner. Since the record supports a determination that the evidence upon which ECIM relies in support of this aspect of its argument is inherently incomplete, the Department did not deviate from its responsibility to decide the issues raised by ECIM's application on the basis of the record evidence by failing to find the necessary need based on general demographic data of the sort upon which ECIM relies.
Thirdly, ECIM argues that the Department did not properly consider expressions of community support received at the public hearing and the information received by means of patient surveys. ECIM contends that its current service with Alliance is fully utilized and that patients have expressed frustration at waiting two to three weeks for service. This aspect of ECIM's argument rests upon the desires of the community rather than an evaluation of the needs of the service area. This Court held in Good Hope, 189 N.C.App. at 563, 659 S.E.2d at 473, that an administrative agency's obligation to hear the public's arguments, "whether in favor of or opposed to an application," does not require the Department to find that an applicant has satisfied the need criterion in the event that there is public support for the proposed service. Instead, the agency must base its decision upon an analysis of all of the relevant evidence tending to show whether the requirements of a particular statutory criterion have been met. Id. Moreover, the wait times experienced by ECIM patients, while certainly relevant to the need determination, constitute only a portion of the larger picture, which consists of the needs of all potential patients in the service area rather than a subset of that group. As a result, ECIM's showing of community support and patient dissatisfaction is not, either considered in isolation or as part *262 of its overall evidentiary presentation, sufficient to compel a finding of need.
Finally, ECIM notes that its current service with Alliance is fully utilized and that the addition of two days of service added in October 2007 did not affect the existing average two-week wait period. Once again, however, this evidence does not compel a finding that ECIM's proposed mobile MRI scanner is needed. Although this evidence certainly provides an indication that ECIM patients are experiencing a two week wait time in spite of the expansion of the service available to ECIM from Alliance, it does not demonstrate whether the need can be met by other scanners in the service territory, including the new fixed scanner planned for 2008. Thus, once again, we are unable to conclude that the Department erred by failing to make a finding of need based on evidence relating to the wait times experienced by ECIM's patients at affiliated facilities. As a result, we cannot conclude that the Department erred by failing to credit and act upon the evidence that ECIM offered in an attempt to establish a need for the proposed mobile MRI scanner.

b. Compliance With 10 N.C.A.C. 14C.2703(a)(2) and (3)
Elsewhere in its brief, ECIM argues that the Department erred by concluding that its application failed to conform with 10 N.C.A.C. 14C.2703(a)(2) and (3), which specify certain factors that must be considered in conjunction with the need criterion. According to 10 N.C.A.C. 14C.2703(a), an applicant must:
(2) demonstrate [that] annual utilization in the third year of operation is reasonably projected to be at least 3328 weighted MRI procedures on each of the existing, approved and proposed mobile MRI scanners owned by the applicant or a related entity to be operated in the mobile MRI region in which the proposed equipment will be located [Note: This is not the average number of weighted MRI procedures performed on all of the applicant's mobile MRI scanners.]; and
(3) document the assumptions and provide data supporting the methodology used for each projection required in this Rule.
According to ECIM, the Department erroneously failed to make any findings in support of its decision to reject ECIM's projection that 3,488 weighted MRI procedures would be performed on the proposed mobile MRI scanner in the third year.
In its Final Agency Decision, the Department rejected ECIM's estimates because ECIM had not adequately explained the methodology used to develop this projection. In making this determination, the Department found that:
43. Respondent found that ECIM failed to adequately demonstrate the mobile MRI scanner will perform 3,328 weighted MRI procedures in its third operating year. (Agency File, Exhibit 2, p. 122.) 10[ ] N.C.A.C. 14C.2703(a)(2). The undersigned finds as a fact and as a matter of law that ECIM did not prove by a preponderance of the evidence that the mobile scanner would perform 3,328 weighted MRI procedures in its third operating year.
. . . .
45. Respondent found that ECIM failed to provide adequate documentation to support each of its assumptions. 10[ ] N.C.A.C. 14C.2703(a)(3).
Based on these findings, the Department concluded as a matter of law that "[t]he Agency properly determined that the ECIM application did not conform with Regulatory Criteria 10 N.C.A.C 14C.2703(a)(2), because ECIM failed to demonstrate annual utilization in the third year of operation is reasonably projected to be at least 3328 weighted MRI procedures on the proposed MRI scanner" and that "[t]he Agency properly determined that the ECIM application did not conform with Regulatory Criteria 10 N.C.A.C. 14C.2703(a)(3)" because ECIM "failed to provide adequate documentation to support each of its assumptions" and "did not state with sufficient clarity how it would achieve its goals set forth in its application." Although ECIM argues on appeal that the Department failed to adequately explain the reason that it concluded that ECIM had not *263 met the applicable burden of proof, it acknowledges that, at the hearing, the CON Section "discounted [the physician referral letters upon which ECIM relied to support its estimate of the number of MRI scans to be performed in the third year] by applying `criteria' that are not requirements under the CON regulations." The fact that ECIM appears to dispute the validity of the approach adopted by the Department in discounting the number of projected MRI scans that would be performed using the proposed mobile MRI scanner in the third year does not, without more, establish that this discounting procedure lacked adequate evidentiary support or was arbitrary and capricious. Thus, we are not persuaded by ECIM's challenge to the need-related determinations that the Department made pursuant to 10 N.C.A.C. 14C.2703(a)(2) and (3).

c. Adequacy of the Department's Findings
Although most of ECIM's challenge to the Department's need determination rests on its contention that the Department failed to adequately consider evidence that ECIM offered in support of its position, ECIM also challenges the extent to which one of the Department's findings had adequate record support and appears to argue that the Department's findings do not support its conclusion that ECIM failed to satisfy Criterion No. 3. Once again, we do not find ECIM's argument persuasive.
In its brief, ECIM challenges the Department's finding that "[p]atients of ECIM's physicians wait two weeks to receive MRI studies at ECIM-MRI facilities" and that "ECIM has not attempted to determine whether this waiting period could be avoided by making use of other MRI services available in the service area" on the grounds that this finding lacks adequate evidentiary support. However, upon closer examination, it appears that ECIM's argument amounts to an assertion that the Department should have treated the first component of this finding as a reason for approving the proposed mobile MRI scanner rather than as a reason for rejecting it and that the evidence tending to show that Coastal Carolina had a two week waiting period at its scanner and that there were long drives and wait times associated with utilizing other area MRI scanners undercut the validity of the second aspect of this finding. However, the fact that ECIM does not challenge the factual accuracy of the first component of this finding, coupled with the anecdotal nature of the countervailing evidence upon which ECIM relies in challenging the second component does not deprive this finding of adequate record support, especially given the existence of other evidence tending to show that ECIM had not adequately explored its ability to reduce the wait times experienced by its patients using equipment owned and operated by other providers.[8] Thus, ECIM's challenge to this particular finding of fact lacks merit.
A careful examination of the Department's findings of fact relating to Criterion No. 3, which we quoted earlier in this opinion, demonstrates that the Department had an adequate basis for its conclusion that ECIM had not made the requisite showing of need. Among other things, the Department found that ECIM had not "state[d] specifically that it needs additional capacity [or] that it has been denied additional days of service by" Alliance; that it had not provided an adequate showing in support of its contention that, "as a new MRI provider in Craven County, [it] could achieve 13 percent of the Craven County market;" that it had failed to demonstrate "how it could achieve a 13 percent market share in Craven County, a 12.7 percent share in Pamlico County, and a 10.8 percent market share in Carteret County in light of the upcoming development of two additional fixed MRI scanners;" that it had failed to "provide data as to the need for service by county and did not provide the number of Medicare/Medicaid patients that ECIM physicians referred to other MRI scanners in the service area;" that it had not provided "letters from physicians in the proposed service area specifying where they will refer patients in order to support the `nearly 700 annually' referrals it estimates in referrals *264 from these physicians;" that it did "not provide data as to the number of potential patients who are not living `close-in to New Bern' or an estimate of the number of patients that ECIM New Bern physicians are currently having to send elsewhere for MRI scans;" and that it "has not attempted to determine whether [the two week] waiting period [described in ECIM's application] could be avoided by making use of other MRI services." A careful examination of these findings indicates that they provide ample justification for the Department's determination that ECIM had failed to satisfy the need criterion. As a result, in light of our examination of the entire record utilizing the "whole record" test, we conclude that the record contains substantial evidence supporting the Department's findings of fact and that the findings support the Department's ultimate conclusion that ECIM's application did not satisfy the need criterion.

6. Other Criteria
As a result of our decision to uphold the Department's determination that ECIM failed to satisfy the need criterion, ECIM's application was clearly subject to denial for failing to satisfy all of the applicable review criteria. See Good Hope, 189 N.C.App. 534, 659 S.E.2d 456. Thus, we need not address ECIM's remaining challenges to the Department's Final Agency Decision and refrain from doing so.

7. Arbitrary and Capricious
Finally, ECIM contends that the Department's Final Agency Decision to deny its application was arbitrary and capricious. In seeking to persuade us of the merits of this argument, ECIM asserts that the Department failed to adequately examine the evidence or address the ALJ's findings. We do not find ECIM's argument persuasive.
The "arbitrary or capricious" standard is a difficult one to meet. Administrative agency decisions may be reversed as arbitrary or capricious if they are "patently in bad faith," or "whimsical" in the sense that "they indicate a lack of fair and careful consideration" or "fail to indicate any course of reasoning and the exercise of judgment[.]"
ACT-UP Triangle v. Commission for Health Services, 345 N.C. 699, 707, 483 S.E.2d 388, 393 (1997) (citation omitted). A careful examination of the Department's decision reveals that it thoroughly considered and analyzed the record evidence. The Department adequately explained the reasons that caused it to conclude that ECIM had failed to satisfy all of the criteria relevant to its application. Britthaven, 118 N.C.App. at 384, 455 S.E.2d at 460; Total Renal Care, 171 N.C.App. at 740, 615 S.E.2d at 85. At bottom, the basic reason that the Department denied ECIM's application was ECIM's failure to document the validity of its assertions of compliance with the applicable review criteria. Any failure on the part of ECIM to adequately document and explain its assertions of compliance would constitute a reasonable basis for denying its application. After reviewing the entire record, we conclude that, since the record contains substantial evidence that supports the Department's findings, since the Department's findings adequately support its conclusions, and since the record contains no other support for ECIM's contention that the Department acted arbitrarily and capriciously in rejecting its application, we cannot conclude that the Department's decision should be overturned as arbitrary and capricious.

III. Conclusion
For the reasons set forth above, we conclude that ECIM has not demonstrated that the Department committed an error of law that necessitates an award of relief. As a result, the Department's decision should be, and hereby is, affirmed.
AFFIRMED.
Judges BRYANT and ELMORE concur.
NOTES
[1] In addition, ECIM applied for authorization to install and operate the fixed MRI scanner that would become available in 2008 as well.
[2] The previous decisions of this Court have clearly established that the 1999 version of N.C. Gen. Stat. § 150B-51 controls our review of Department orders granting or denying CON applications. Total Renal Care, 171 N.C.App. at 738, 615 S.E.2d at 83-84.
[3] In addition to the standard of review issues discussed in the text of this opinion, we are also required "to determine whether the [Department] relied on new evidence in making its decision." Total Renal Care, 171 N.C.App. at 738, 615 S.E.2d at 84 (citing N.C. Gen.Stat. § 150B-34(c)); N.C. Gen.Stat. § 150B-51(a); Mooresville Hosp. Mgmt. Assocs. v. N.C. Dep't of Health & Human Servs., 169 N.C.App. 641, 647, 611 S.E.2d 431, 435-36, disc. review improvidently granted, 360 N.C. 156, 622 S.E.2d 621 (2005). However, since ECIM has not alleged that the Department considered new evidence in reaching its final decision, we need not address that issue in any detail.
[4] In spite of our conclusion that the form of the challenged findings does not require us to overturn the Department's decision, we do agree with ECIM that it would be preferable for the Department to couch its findings in future decisions as the Department's own determinations rather than as a recitation of what the CON Section found.
[5] In a related challenge to the Department's determination, ECIM argues that the Department did not utilize the statutorily-required preponderance of the evidence standard in making its factual determinations and that we should effectively conduct a de novo examination of the record. However, it is clear from the reasons that the Department gave for rejecting certain of ALJ Webster's findings that it correctly utilized a preponderance of the evidence standard in making its final decision.
[6] According to ECIM, the Department failed to address its argument that ECIM was not required to establish that ECIM needed additional MRI capacity or that it had been denied additional days of service by its contract provider, that it was not required to provide the number of Medicare and Medicaid patients that it had referred to other MRI scanners, that it was not required to serve a certain percentage of Medicare or Medicaid patients in order to receive the requested CON, and that other criticisms of the CON Section's decision advanced by ALJ Webster had merit. At bottom, we believe that this aspect of ECIM's argument rests on a desire for more detailed findings of fact than were provided in the Department's final decision. Although an administrative agency is certainly required to include sufficient findings of fact to permit a reviewing court to determine whether the agency's decision was supported by sufficient evidence and whether the agency properly applied the applicable law, the agency is not required to minutely analyze every factual dispute that arises on the evidentiary record at the risk of having its decision overturned. Smith v. Beasley Enters., Inc., 148 N.C.App. 559, 562, 577 S.E.2d 902, 904 (2002) (stating that an administrative agency is not required to make "`exhaustive findings as to each statement made by any given witness or make findings rejecting specific evidence'") (quoting Bryant v. Weyerhaeuser Co., 130 N.C.App. 135, 139, 502 S.E.2d 58, 62, disc. review denied, 349 N.C. 228, 515 S.E.2d 700 (1998)). Thus, the Department's failure to address each and every argument that ECIM utilized in its attempt to overturn the CON Section's decision simply does not constitute an error of law as long as we are able to carry out the fundamental responsibilities imposed upon a reviewing court. As a result of our determination that the Department's findings and conclusions are sufficient to permit adequate appellate review, its failure to make findings of fact addressing the issues listed in ECIM's brief does not justify a decision to grant appellate relief in this case.
[7] The Alliance scanner provided service to ECIM patients on a contract basis.
[8] For example, both ECIM's Chief Operating Officer, Craig Holton, and an ECIM physician, Dr. Robert Monteiro, testified that they were not aware of the wait times for other MRI scanners in the service area.